[No. AO18485. First Dist., Div. One. Mar. 8, 1983.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID HERNANDEZ RIOS, Defendant and Appellant.

618

COUNSEL

Carmen J. Newby and J. Bruce Newby for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**ELKINGTON, Acting P. J.**—Defendant Rios was convicted upon a jury's verdict of robbery with use of a firearm. (Pen. Code, §§ 211, 12022.5.) He had admitted one prior felony conviction, and two other allegations of such convictions were stricken. He appeals from the judgment which was entered upon the verdict.

We affirm for reasons as follow.

The several appellate contentions are stated in the order and as phrased by Rios.

I. *Contention*: "The 1538.5 motion should have been granted."

Around 7 p.m., *July 21, 1981*, the San Jose Police Department received a citizen's telephone report of a light colored or green "Chevy," in or near a described public park, which was illegally parked and a traffic hazard. There

were two subjects. One "was a Mexican or Latino male adult, approximately eighteen years of age, about five-four, 130. Was wearing a blue baseball cap, had short black hair, was wearing a light blue lady's smock, Levi's. He was stopping vehicles and asking people in the vehicles to meet him in back of the park building. The subject was there last night and they thought he was possibly selling drugs."

A police officer furnished with the information was promptly dispatched to the reported location. He was an experienced officer and knew that there had been "lots" of drug activity in the area.

At or near the reported scene the officer observed a 20-year-old white Chevy sedan. Its license number was *LRR 136,* and its driver answered the detailed reported description. The car, which was being lawfully driven, was stopped. The driver gave the officer his name, David Rios, and displayed his driver's license and the car's registration. The female registrant, Rios explained, was his girlfriend. No search was made of the car or its occupants. A radio inquiry disclosed no adverse police information (except that Rios was on parole). No criminal activity being apparent, the detention was ended.

The officer thereupon made out a "field identification" card which became a police department record of the incident.

About a month later, *August 22, 1981,* an armed robbery of a San Jose gasoline service station occurred. The robbers were a man wearing a bandana over his face, and a woman. Four hundred dollars were stolen. A customer of the station reported that the couple drove off in an older white automobile with a license numbered *LRR 136.* And as the male robber was "taking the money out of the drawer" the bandana fell from his face for a moment, allowing the nearby service station manager to see it. The robbery, with its above-stated details, was reported to the police. A computer checkout of the described motor vehicle promptly developed that defendant Rios had been the driver, one month before, of the same "white Chevy, license number *LRR 136.*" He was thereupon arrested, and the service station manager identified him as the robber.

Rios' instant contention, as we understand it, is that his apprehension and arrest for the *August 22, 1981* robbery was the poisonous fruit of the *July 21, 1981* vehicle detention. The detention, he then argues, was unsupported by information which "could inspire confidence in [a] sane person. *People* v. *Bassett* (1968) 69 Cal.2d 122, 138-139," and thus was not supported by "substantial evidence."

He misunderstands the required quantum of information, or evidence, for a detention.

■ It is now settled law "that circumstances short of probable cause to make an arrest may still justify an officer's stopping . . . motorists on the streets for questioning." (*People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) And where there is such a right to so detain, there is a companion right to request, and obtain, the detainee's identification. (*People* v. *Solomon* (1973) 33 Cal.App.3d 429, 435 [108 Cal.Rptr. 867]; and see *Yuen* v. *Municipal Court* (1975) 52 Cal.App.3d 351, 358 [125 Cal.Rptr. 87].) Under such circumstances: "Disclosure of name and address is an essentially neutral act," beyond Fourth Amendment concern. (*California* v. *Byers* (1971) 402 U.S. 424, 432 [29 L.Ed.2d 9, 19, 91 S.Ct. 1535].)

■ It is also settled law that a citizen informer's report may reasonably create a police officer's suspicion and trigger an investigation. (*People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People* v. *Schulle* (1975) 51 Cal.App.3d 809, 814 [124 Cal.Rptr. 585].) ■ And, *In re Tony C.* (1978) 21 Cal.3d 888, 894 [148 Cal.Rptr. 366, 582 P.2d 957], teaches: "[A] reasonable suspicion of involvement in criminal activity will justify a temporary stop or detention. Under that standard, if the circumstances are 'consistent with criminal activity,' they permit—even demand—an investigation: the public rightfully expects a police officer to inquire into such circumstances 'in the proper discharge of the officer's duties.' . . . No reason appears for a contrary result simply because the circumstances are also 'consistent with lawful activity,' as may often be the case. The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of his investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal—to 'enable the police to quickly determine whether they should allow the suspect to go about his business or hold him to answer charges.' . . . The citizen's undoubted interest in freedom from abuse of this procedure is protected—so far as it is within the law's power to do so—by the correlative rule that no stop or detention is permissible when the circumstances are not reasonably 'consistent with criminal activity' and the investigation is therefore based on mere curiosity, rumor or hunch."

■ " '[T]he power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence.' [¶] No less important, however, is the second step of the process. . . . 'The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution.' . . . Because 'that issue is a question of law,' the appellate court is not bound by the substantial evidence standard in reviewing the trial court's decision thereon. Rather, . . . in such

review it is 'the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness.' . . . On that issue, in short, the appellate court exercises its independent judgment." (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

■ Applying these several criteria, we find the police officer's conduct, in relation to the July 21, 1981, detention of Rios, to have comported with the Fourth Amendment's requirement of reasonableness. The superior court did not err in denying Rios' Penal Code section 1538.5 motion to suppress.

II. *Contention*: "The prosecutor commented on defendant's silence violating *Griffin* and was unreasonably hyperbolic."

Rios did not take the witness stand at the trial. In his argument to the jury the prosecutor stated: "Now, don't misunderstand me. A defendant doesn't have any obligation to get up on the stand and explain anything to you, and if I were the accused, I don't believe I would get up on the stand and say anything either in a lot of circumstances."

■ *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229], as is well known, holds it to be constitutionally impermissible for the prosecutor to comment to the jury on a defendant's failure to explain, or deny, by his testimony the evidence against him. Here the prosecutor's plain purpose was to assure the jury that were he Rios he also, in view of the strong evidence of guilt, would *not* take the witness stand. The comment was a blatant violation of *Griffin* v. *California*. It was, as contended by Rios, prosecutorial misconduct.

The question remains however, whether the misconduct was harmless. We find the proof of Rios' guilt to be exceedingly strong and conclude, albeit reluctantly, that the prosecutorial misconduct was harmless under the criteria of the state's Constitution, article VI, section 13, *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243], and *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].

No substance is found in the remaining incidental assignments of prosecutorial misconduct.

■ III. *Contention*: "The introduction by the prosecutor of the testimony of defendant's sister was grossly unfair."

An inference, or at least a suggestion, might have appeared at the trial that Rios' sister was the female driver of the robbery automobile. The prosecutor

advised the trial court, out of the jury's presence, that he intended to call her as a witness. The court thereupon advised her fully as to her Fifth Amendment rights. She replied that she wished to waive those rights and to testify. She thereupon testified that Rios was at home with her at the time the robbery was established to have occurred. We discern no unfairness, or other legal or constitutional impropriety, in the proceedings. Nor are we persuaded that Rios was somehow improperly made to appear guilty by association.

The judgment is affirmed.

Newsom, J., and Holmdahl, J., concurred.

A petition for a rehearing was denied March 31, 1983, and appellant's petition for a hearing by the Supreme Court was denied May 4, 1983.