[No. S128640. June 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SUSAN WELLS, Defendant and Appellant.

## Counsel

Elizabeth Campbell, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Janet E. Neeley, Doris Calandra, Kathleen A. McKenna, Robert P. Whitlock and Connie A. Proctor, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**CHIN, J.**—We granted this case to consider under what circumstances, if any, police officers may stop a vehicle and detain its driver based solely on an

uncorroborated phoned-in tip that accurately describes the vehicle and its location and relates that a possibly intoxicated person is behind the wheel, "weaving all over the roadway." As we explain, although the law appears somewhat unsettled, the better rule, firmly supported by many cases as well as by considerations of public safety and common sense, is that a limited traffic stop is permitted under such circumstances to confirm the officer's reasonable suspicion of intoxicated driving before a serious traffic accident can occur.

## FACTS

The following uncontradicted facts are taken from the Court of Appeal opinion in this case. On February 14, 2003, at 1:43 a.m., California Highway Patrol traffic officer Julian Irigoyen was engaged in traffic enforcement on Highway 99 in Kern County north of Bakersfield. He received a dispatch report of a possibly intoxicated driver "weaving all over the roadway." (The record is silent as to the identity of the caller or circumstances leading to the call, but we may reasonably infer that the report was based on an anonymous phoned-in tip.) The subject vehicle was described as a 1980's model blue van traveling northbound on Highway 99 at Airport Drive. Officer Irigoyen was headed southbound three to four miles north of that location, with only one entry/exit ramp between his position and the reported location of the van.

Upon receiving the dispatch, Officer Irigoyen positioned himself on the shoulder of northbound Highway 99 and watched for the described vehicle. Two or three minutes later, when he saw a blue van traveling approximately 50 miles per hour, he activated his patrol car lights and stopped the van to investigate whether the driver was impaired. The officer did not observe the van weaving, speeding, or otherwise violating any traffic laws, perhaps because he stopped the van so soon after spotting it.

Defendant was the driver of the van. While speaking with her at the scene, the officer noticed that she had constricted pupils and a dry mouth. The officer asked her to exit the vehicle, at which time she became visibly nervous. The officer suspected that she was under the influence of illegal drugs and began conducting field sobriety tests. At the conclusion of the tests, the officer placed her under arrest for driving under the influence. (Veh. Code, § 23152, subd. (a).) Later, her urine tested positive for THC, cocaine, and opiates. During an inventory search of the van, police found a black suitcase containing several syringes and some heroin.

Following the preliminary hearing, defendant was charged with possession of heroin (Health & Saf. Code, § 11350, subd. (a)), driving under the influence of a controlled substance (Veh. Code, § 23152, subd. (a)), being

under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a)), and possession of a device for injecting a controlled substance (Health & Saf. Code, § 11364). Defendant initially pleaded not guilty.

Defendant filed a motion to suppress evidence, asserting that the stop of her van was improper. (Pen. Code, § 1538.5.) The court found that the stop was proper, noting that the description of the vehicle was specific, and the vehicle itself (a 1980's model blue van) was distinctive. Moreover, defendant's van was traveling in the same direction and at the same location as the suspected van. Based on these factors, the trial court found that the stop was reasonable and denied defendant's motion to suppress.

After the court denied the suppression motion, defendant withdrew her plea and pursuant to a plea agreement pleaded no contest to possession of heroin (Health & Saf. Code, § 11350, subd. (a)) and driving under the influence (Veh. Code, § 23152, subd. (a)). She was sentenced to 16 months in state prison on the possession count, and a concurrent six-month term on the driving under the influence count.

On appeal, defendant argued that the trial court erred in denying her suppression motion because she was detained without reasonable suspicion. The Court of Appeal rejected this contention, concluding that the anonymous tip, amply corroborated in its "innocent" details, afforded reasonable suspicion to stop and investigate. Defendant now seeks our review. We will affirm.

### DISCUSSION

The issue can be easily stated, although somewhat less easily resolved: Does an anonymous and uncorroborated tip regarding a possibly intoxicated highway driver afford a police officer reasonable suspicion sufficient to justify a temporary detention to investigate further? The answer requires an examination of seemingly conflicting case law and a weighing of considerations of public safety with expectations of personal privacy. As will appear, we have concluded that, under the circumstances in this case, the grave risks posed by an intoxicated highway driver justified the minimal intrusion of a brief investigatory traffic stop.

■ Under the cases, an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. (*Ornelas v. United States* (1996) 517 U.S. 690, 693 [134 L.Ed.2d 911, 116 S.Ct. 1657]; *People v. Superior Court (Simon)* (1972) 7 Cal.3d 186, 200 [101 Cal.Rptr. 837, 496 P.2d 1205]; *People v. Miranda* (1993) 17 Cal.App.4th 917, 926 [21 Cal.Rptr.2d 785]; see also *Terry v. Ohio* (1968) 392 U.S. 1, 22 [20 L.Ed.2d 889, 88 S.Ct. 1868]; *In re Tony C.* (1978) 21 Cal.3d 888, 892–894 [148 Cal.Rptr. 366,

582 P.2d 957].) The guiding principle in determining the propriety of an investigatory detention is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." (*Terry v. Ohio, supra,* 392 U.S. at p. 19; see *In re Tony C., supra,* 21 Cal.3d at p. 892.) In making our determination, we examine "the totality of the circumstances" in each case. (E.g., *Alabama v. White* (1990) 496 U.S. 325, 330 [110 L.Ed.2d 301, 110 S.Ct. 2412]; *U. S. v. Wheat* (8th Cir. 2001) 278 F.3d 722, 726 (*Wheat*).)

 Reasonable suspicion is a lesser standard than probable cause, and can arise from less reliable information than required for probable cause, including an anonymous tip. (E.g., *Alabama v. White, supra,* 496 U.S. at p. 330.) But to be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are "reasonably 'consistent with criminal activity.' " (*In re Tony C., supra,* 21 Cal.3d at p. 894.) The officer's subjective suspicion must be objectively reasonable, and "an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]" (*Id.* at p. 893.) But where a reasonable suspicion of criminal activity exists, "the public rightfully expects a police officer to inquire into such circumstances 'in the proper exercise of the officer's duties.' [Citation.]" (*Id.* at p. 894.)

 In this case, Officer Irigoyen could reasonably believe that the blue van described in the dispatched tip was the same car he eventually stopped, as it matched the description, and was traveling in the same direction and at the same time and location as described. But, in the brief period while observing the van before stopping it, the officer saw nothing to indicate the driver was intoxicated. Is an anonymous citizen's tip of a possibly intoxicated highway driver "weaving all over the roadway" sufficient to raise a reasonable suspicion that would justify an investigatory stop and detention under these circumstances? We believe so.

The California cases indicate that a citizen's tip may itself create a reasonable suspicion sufficient to justify a temporary vehicle stop or detention, especially if the circumstances are deemed exigent by reason of possible reckless driving or similar threats to public safety. (*Lowry v. Gutierrez* (2005) 129 Cal.App.4th 926 [28 Cal.Rptr.3d 912] [phoned-in tip of erratic driving]; *People v. Rios* (1983) 140 Cal.App.3d 616 [189 Cal.Rptr. 634] [car illegally parked and traffic hazard]; *People v. Superior Court* (*Meyer*) (1981) 118 Cal.App.3d 579 [173 Cal.Rptr. 544] [reckless driving, driver pointing gun].)

*Lowry v. Gutierrez, supra,* 129 Cal.App.4th 926, is closely apposite, as it involved an anonymous cell phone tip that a specific vehicle was being driven the wrong way on a city street and had turned into oncoming traffic.

Although the detaining officer himself observed no erratic driving, the Court of Appeal agreed that an immediate investigatory stop was appropriate under these exigent circumstances. (*Id.* at pp. 940–942.) The court, citing California Highway Patrol statistics, noted the grave public safety hazard posed by drunken drivers. (*Id.* at p. 940.) The court also stressed the unlikelihood of a false report, and the tipster's detailed description of the car, its location, and the nature of the erratic driving, making it likely the caller was an eyewitness. (*Id.* at p. 941.)

Defendant relies on the United States Supreme Court's decision in *Florida v. J. L.* (2000) 529 U.S. 266 [146 L.Ed.2d 254, 120 S.Ct. 1375] (*J. L.*), involving an anonymous phoned-in tip claiming a young African-American man in a plaid shirt standing at a particular bus stop was carrying a gun. The high court held the tip insufficient to justify a brief detention and patdown search, absent some independent corroboration of the reliability of the tip and tipster's assertion of illegal conduct. (*Id.* at pp. 272–274.) As the court stated, "[a]ll the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J. L." (*Id.* at p. 271.) The high court stressed that the tip contained no "predictive information" (such as predicting the suspect's future behavior) that might demonstrate the tipster had inside information of concealed criminal activity. (*Ibid.*) Subsequent California cases involving reports of possessory offenses rather than possible intoxicated driving reach similar results. (See *People v. Jordan* (2004) 121 Cal.App.4th 544 [17 Cal.Rptr.3d 157]; *People v. Butler* (2003) 111 Cal.App.4th 150 [4 Cal.Rptr.3d 1]; *People v. Saldana* (2002) 101 Cal.App.4th 170, 175 [123 Cal.Rptr.2d 763].)

Significantly for our purposes, the *J. L.* court acknowledged the possibility that more exigent circumstances, such as a report of someone carrying a bomb, might justify a stop and search despite the inability to corroborate the informant's reliability. (*J. L., supra,* 529 U.S. at pp. 273–274.) The court was reluctant, however, to adopt an "automatic firearm exception" to the reliability requirement, an exception that would allow persons to harass and embarrass another person by simply phoning in a false tip that he or she was carrying a weapon. (*Id.* at p. 272.)

Is *J. L.* controlling in this case? The Attorney General urges us to find *J. L.* is distinguishable from cases involving tips of reckless, possibly intoxicated, driving. Although a split of authority exists, this conclusion is supported by many out-of-state cases which have considered the question. Most of these cases are gathered in *Wheat,* an Eighth Circuit case also involving an anonymous tip of erratic driving in which the officer observed no unlawful activity. (*Wheat, supra,* 278 F.3d at pp. 727–731 [cases upholding search and

cases invalidating search]; see generally York, *Search and Seizure: Law Enforcement Officers' Ability to Conduct Investigative Traffic Stops Based Upon an Anonymous Tip Alleging Dangerous Driving When the Officers Do Not Personally Observe Any Traffic Violations* (2003) 34 U.Mem. L.Rev 173; Bryk, *Anonymous Tips to Law Enforcement and the Fourth Amendment: Arguments for Adopting an Imminent Danger Exception and Retaining the Totality of the Circumstances Test* (2003) 13 Geo. Mason U. Civ. Rts. L.J. 277.)

As *Wheat* explained (*Wheat, supra,* 278 F.3d at pp. 729–730), cases allowing the search stress the accuracy of the tipster's description and location of the vehicle, the relatively greater urgency presented by drunken or erratic highway drivers, and the minimal intrusion involved in a simple vehicle stop. (See *State v. Smith* (Ind.Ct.App. 1994) 638 N.E.2d 1353; *State v. Walshire* (Iowa 2001) 634 N.W.2d 625, 627–630; *State v. Slater* (1999) 267 Kan. 694 [986 P.2d 1038, 1041–1046]; *State v. Sampson* (Me. 1996) 669 A.2d 1326; *State v. Melanson* (1995) 140 N.H. 199 [665 A.2d 338, 339–341]; *People v. Rance* (1996) 227 A.D.2d 936 [644 N.Y.S.2d 447]; *Kaysville City v. Mulcahy* (Utah Ct.App. 1997) 943 P.2d 231; *State v. Boyea* (2000) 171 Vt. 401 [765 A.2d 862, 867–868].)

*Wheat* observed (*Wheat, supra,* 278 F.3d at pp. 730–731), on the other hand, that cases invalidating the search rely on the generality of the tipster's information, or the absence of corroborating evidence of illegal activity. (See *Washington v. State* (Ind.Ct.App. 2000) 740 N.E.2d 1241, 1243–1246; *State v. Boyle* (La.Ct.App. 2001) 793 So.2d 1281, 1284–1285; *Commonwealth v. Lubiejewski* (2000) 49 Mass.App.Ct. 212 [729 N.E.2d 288, 292]; *State v. Lee* (1997) 282 Mont. 391 [938 P.2d 637, 638–40]; *State v. Miller* (N.D. 1994) 510 N.W.2d 638, 640–645; *Stewart v. State* (Tex.Ct.App. 2000) 22 S.W.3d 646, 648–650; *McChesney v. State* (Wyo. 1999) 988 P.2d 1071, 1075–1078; see also *State v. Villegas-Varela* (1994) 132 Ore.App. 112 [887 P.2d 809, 810–813].)

*Wheat* discussed the high court's decision in *J. L., supra,* 529 U.S. at pages 273–274, focusing on *J. L.*'s caveat about a possible public safety exception, as discussed above (*ante,* at p. 1084). *Wheat* took guidance from "those state courts that have already considered the issue. The Supreme Courts of Vermont, Iowa, and Wisconsin have held that *J. L.* does not prevent an anonymous tip concerning erratic driving from acquiring sufficient indicia of reliability to justify a *Terry* [*Terry v. Ohio, supra,* 392 U.S. 1] stop, even when the investigating officer is unable to corroborate that the driver is operating the vehicle recklessly and therefore unlawfully." (*Wheat, supra,* 278 F.3d at p. 729.)

■ *Wheat* acknowledged that some lower appellate state courts believed that *J. L.* would invalidate investigative stops based on tips of uncorroborated

erratic driving. (*Wheat, supra,* 278 F.3d at pp. 730–731.) After reviewing all the foregoing cases, however, *Wheat* concluded that tips of drunken or erratic driving may indeed provide reasonable suspicion justifying a traffic stop if the following factors are present: First, the tipster must furnish sufficient identifying information regarding the vehicle and its location, so the officer and reviewing courts may be reasonably sure the vehicle stopped is the one identified by the caller. (*Id.* at p. 731.) Second, the tip should indicate the caller had actually witnessed a contemporaneous traffic violation that compels an immediate stop, rather than merely speculating or surmising unlawful activity. (*Id.* at p. 732.) And third, at least the "innocent details" of the tip must be corroborated by the officers. (*Id.* at p. 735.)

*Wheat* believed that in the context of reckless and possibly intoxicated driving, the tip's lack of "predictive information" (see *J. L., supra,* 529 U.S. at p. 269) was not critical to determining its reliability. Such an analysis is more appropriate in cases involving tips of concealed criminal behavior such as possession offenses. (*Wheat, supra,* 278 F.3d at p. 730.) We agree. An informant's accurate description of a vehicle and its location provides the tip with greater reliability than in the situation of a concealed firearm, because the informant was presumably an eyewitness to illegal activity and his tip can be sufficiently corroborated by the officer spotting the described vehicle in the expected time and place.

In the words of the Vermont Supreme Court in *State v. Boyea, supra,* 765 A.2d at page 867, "[i]n contrast to the report of an individual in possession of a gun, an anonymous report of an erratic or drunk driver on the highway presents a qualitatively different level of danger, and concomitantly greater urgency for prompt action. In the case of a concealed gun, the possession itself might be legal, and the police could, in any event, surreptitiously observe the individual for a reasonable period of time without running the risk of death or injury with every passing moment. An officer in pursuit of a reportedly drunk driver on a freeway does not enjoy such a luxury. Indeed, a drunk driver is not at all unlike a 'bomb,' and a mobile one at that." (Fn. omitted.)

*Wheat* also found it unlikely that malicious pranksters would use anonymous reports of erratic driving to harass other drivers, and in any event the risk of such misconduct was slight compared to the risks in failing to investigate a report of unsafe driving. (*Wheat, supra,* 278 F.3d at pp. 735–737.) *Wheat* concluded that under the totality of circumstances, including the tipster's extensive description of the subject vehicle and the driver's erratic driving, the officer's corroboration of the "innocent details" of the tip, and the officer's immediate action in effecting an investigatory stop, the officer had reasonable suspicion to stop the vehicle. (*Id.* at p. 737.)

We agree with *Wheat*, and many of the cases it cites, that *J. L.* presents a distinguishable situation. First, a report of a possibly intoxicated highway driver, "weaving all over the roadway," poses a far more grave and immediate risk to the public than a report of mere passive gun possession. Police officers undoubtedly would be severely criticized for failing to stop and investigate a reported drunk driver if an accident subsequently occurred. As we stated in *In re Tony C.,* where a reasonable suspicion of criminal activity exists, "the public rightfully expects a police officer to inquire into such circumstances . . . ." (*In re Tony C., supra,* 21 Cal.3d at p. 894.)

In this regard, we observe that the high court has upheld police roadblocks stopping all drivers to investigate possible drunk driving, despite a complete lack of articulable facts indicating an immediate risk of harm. (*Michigan Dept. of State Police v. Sitz* (1990) 496 U.S. 444, 455 [110 L.Ed.2d 412, 110 S.Ct. 2481].) The court determined that the state's interest in preventing drunk driving outweighed the relatively minor inconvenience to individual motorists in being briefly stopped and detained. (*Id.* at pp. 451–453; see *Wheat, supra,* 278 F.3d at pp. 736–737; cf. *People v. Thompson* (2006) 38 Cal.4th 811, pp. 818–819 [43 Cal.Rptr.3d 750, 135 P.3d 3].)

Second, doubts regarding the tipster's reliability and sincerity are significantly reduced in the setting of a phoned-in report regarding a contemporaneous event of reckless driving presumably viewed by the caller. Instances of harassment presumably would be quite rare. (See *Lowry v. Gutierrez, supra,* 129 Cal.App.4th at p. 941; *Wheat, supra,* 278 F.3d at pp. 735–736.)

■ Third, the level of intrusion of personal privacy and inconvenience involved in a brief vehicle stop is considerably less than the "embarrassing police search" on a public street condemned by *J. L., supra,* 529 U.S. at page 272. (See *Wheat, supra,* 278 F.3d at p. 737; see also *Michigan Dept. of State Police v. Sitz, supra,* 496 U.S. at pp. 451–452.) We have observed that "in light of the pervasive regulation of vehicles capable of traveling on the public highways, individuals generally have a reduced expectation of privacy while driving a vehicle on public thoroughfares." (*In re Arturo D.* (2002) 27 Cal.4th 60, 68 [115 Cal.Rptr.2d 581, 38 P.3d 433].)

■ In *J. L.,* the United States Supreme Court observed that in places where one has a reduced expectation of privacy, such as schools or airports, searches may be justified on the basis of information that would be insufficient to justify a search elsewhere. (*J. L., supra,* 529 U.S. at p. 274.) Furthermore, as held in *Wheat,* traffic stops are "less invasive, both physically and psychologically, than the frisk" at issue in *J. L.* (*Wheat, supra,* 278 F.3d at p. 737.) Defendant here was driving a vehicle on a public thoroughfare. We conclude there is a sound and logical distinction between the vehicle stop in the present case and the frisk found unconstitutional in *J. L.*

Fourth, the relatively precise and accurate description given by the tipster in the present case regarding the vehicle type, color, location, and direction of travel, all confirmed by the investigating officer within minutes of receiving the report, enhanced the reliability of the tip. (*Wheat, supra,* 278 F.3d at pp. 731–732.) The investigating officer's inability to detect any erratic driving on defendant's part is not significant. Motorists who see a patrol car may be able to exercise increased caution. Additionally, the officer in this case stopped defendant's van immediately after spotting it.

Defendant observes that in many of the cases upholding searches based on erratic driving tips, the officers had gathered more details from which they might gauge the reliability of the tipster, such as his or her identity and eyewitness status, or whether the tip contained predictive information that might demonstrate the tipster was indeed reliable. (See *J. L., supra,* 529 U.S. at pp. 270–272.) Defendant also doubts that the tip was sufficiently detailed to indicate that indeed a crime was being committed.

It is true the record contains little information regarding the identity or status of the tipster, but like the Court of Appeal below we may reasonably infer that the tip came from a passing motorist. Where else would it have come from? As the Court of Appeal also stated, "We endorse efforts by law enforcement to gather more information to assess the reliability of 911 calls reporting criminal activity." Although the absence of such information may be relevant in determining the totality of the circumstances in a given case, and officers in future incidents should attempt to gather additional information supporting the tip's reliability, we agree with the Court of Appeal that the absence of such information in the present case was not fatal to the subsequent vehicle stop.

Viewing the totality of circumstances in the present case, we are convinced that the officer's traffic stop was justified by reasonable suspicion of criminal activity. As the Court of Appeal held in this case, the tipster's information regarding the van and its location was sufficiently precise, and its report of a motorist "weaving all over the roadway" demanded an immediate stop to protect both the driver and other motorists. The tip reported contemporaneous activity and its "innocent" details were fully corroborated within minutes of the report.

The judgment of the Court of Appeal is affirmed.

George, C. J., Corrigan, J., and Croskey, J.,[*] concurred.

---

[*]Associate Justice, Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**WERDEGAR, J., Dissenting.**—One of the hallmarks of the liberty guaranteed to persons in this country is that agents of the government cannot arrest, seize or detain them without a good reason. (U.S. Const., 4th Amend. ["The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated"]; Cal. Const., art. I, § 13 [same].) As this constitutional guarantee has been interpreted, a full-fledged arrest must be supported by a warrant issued by a neutral magistrate or by probable cause to believe the person arrested has committed a crime. (*People v. Bennett* (1998) 17 Cal.4th 373, 386–387 [70 Cal.Rptr.2d 850, 949 P.2d 947].) Short of outright arrest, police may temporarily detain a person on a lesser showing of cause, but the detention—essentially a temporary seizure of the person—must be supported by reasonable cause to believe the person is guilty of some wrongdoing. (*Ibid.*) These rules apply to traffic stops: "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." (*Whren v. United States* (1996) 517 U.S. 806, 809–810 [135 L.Ed.2d 89, 116 S.Ct. 1769].) "[P]ersons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers." (*Delaware v. Prouse* (1979) 440 U.S. 648, 663 [59 L.Ed.2d 660, 99 S.Ct. 1391].) When police stop a car traveling on the highway due to an alleged traffic violation—that is, when police activate their lights and siren and force the driver of the car to stop—police effect a detention that must be supported by reasonable cause.

We address in this case the effect of an anonymous tip, received by police, that a certain type of vehicle, driving in a certain direction, was driving illegally. The majority today concludes a tip of this nature provides reasonable cause to detain the driver of such a vehicle, even though police fail to confirm any alleged illegality. Because this conclusion is contrary to the United States Supreme Court's admonition in *Florida v. J. L.* (2000) 529 U.S. 266 [146 L.Ed.2d 254, 120 S.Ct. 1375], that confirmation of the innocent details of an anonymous tip is insufficient to provide police with reasonable cause to detain, I dissent.

## I

Officer Irigoyen, a traffic officer for the California Highway Patrol, testified he received a broadcast of "a possible DUI driver, weaving all over the roadway." (As most people by now know, "DUI" stands for driving under the influence.) The broadcast described the vehicle as a 1980's-era blue van driving northbound on State Route 99 at Airport Drive, near Bakersfield. No information was broadcast, and no evidence was presented at either the

preliminary hearing or the suppression hearing, indicating from where or whom this information came. Being three or four miles from the van's last reported location, Officer Irigoyen waited for the van. About three minutes later, a 1980's blue van went by. The van was not weaving and was traveling within the speed limit and otherwise obeying all traffic laws. Officer Irigoyen effected a traffic stop and determined the driver, defendant Susan Wells, was under the influence of drugs.

## II

As the majority recognizes, *Florida v. J. L.*, *supra*, 529 U.S. 266 (*J. L.*), posed a similar situation. In that case, police received an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun." (*Id.* at p. 268.) The identity of the tipster was unknown: "So far as the record reveals, there is no audio recording of the tip, and nothing is known about the informant." (*Ibid.*) Police went to the bus stop, recognized the person from the description, but observed no illegality. "The officers [in *J. L.*] did not see a firearm, and [the defendant] made no threatening or otherwise unusual movements." (*Ibid.*) Thus, in both the instant case and in *J. L.*, police responded to an anonymous tip of a crime, confirmed the innocent aspects of the tip, but did not confirm the tip's report of illegal activity.

The *J. L.* court unanimously reversed the defendant's conviction. At the threshold, the high court distinguished anonymous tips from those of known informants. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated [citation], 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " (*J. L.*, *supra*, 529 U.S. at p. 270, quoting *Alabama v. White* (1990) 496 U.S. 325, 329 [110 L.Ed.2d 301, 110 S.Ct. 2412].)

Next, the court dismissed the state's argument that confirmation of the innocent aspects of an anonymous tip supplied the necessary reasonable cause. "An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. *The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.*" (*J. L.*, *supra*, 529 U.S. at p. 272, italics added.)

Applying the rule of *J. L.* to the facts of this case (*People v. Camacho* (2000) 23 Cal.4th 824, 830 [98 Cal.Rptr.2d 232, 3 P.3d 878] [federal

constitutional law governs state exclusionary rule for search and seizure violations]) would entitle defendant to relief. Officer Irigoyen stopped defendant's car after confirming the innocent details of an anonymous tip (a 1980's-era blue van, driving northbound on State Route 99), but did not confirm the tip's report of any illegality ("weaving all over the roadway"). Officer Irigoyen testified the van was not weaving, was complying with the speed limit and was otherwise following all traffic laws. According to *J. L.*, then, the officer did not have reasonable cause to stop defendant.

In finding *J. L.* inapplicable, the majority unpersuasively attempts to fit this case into a possible exception mentioned by the *J. L.* court. As a possible exception to its rule, the high court observed that a threat to public safety might be "so great" that an anonymous tip of such a catastrophic threat would supply reasonable cause to detain even in the absence of any confirmation of the illegality. (*J. L.*, *supra*, 529 U.S. at pp. 273–274.) The high court suggested "a report of a person carrying a bomb" might qualify for this exception. (*Ibid.*) The majority opines that an anonymous tip of a drunk driver similarly qualifies as a threat to public safety so catastrophic that compliance with *J. L.*'s rule requiring confirmation of the illegality is excused. Thus, the majority asserts that "a report of a possibly intoxicated highway driver, 'weaving all over the roadway,' poses a far more grave and immediate risk to the public than a report of mere passive gun possession [as in *J. L* .]." (Maj. opn., *ante*, at p. 1087.)

The majority misreads *J. L.* That the high court in *J. L.* left open the possibility that a catastrophic threat might justify a somewhat relaxed standard of reasonable cause to detain does not suggest we are now to rank all crimes along a sliding scale, permitting investigatory detentions on lesser showings when the detainees are suspected of more serious crimes. Certainly merely by mentioning the possibility of a threat "so great" that some lesser degree of suspicion could justify a detention, the high court did not suggest such a regime. Moreover, while I do not dispute the seriousness of drunk drivers on our roadways (see *In re Jennings* (2004) 34 Cal.4th 254, 260–261 [17 Cal.Rptr.3d 645, 95 P.3d 906] ["No citation to authority is necessary to establish that automobile accidents by underage drinkers lead to the injuries and deaths of thousands of people in this country every year"]), I am not convinced this fairly common crime poses the type of threat contemplated by the high court, the type of threat "so great" that an exception to the general rule is warranted. In particular, I am not convinced the danger posed by drunk drivers is so much greater than the danger posed by young men carrying concealed firearms (as in *J. L.*) that a different standard should apply under the Fourth Amendment. Indeed, the fact Officer Irigoyen failed to verify that the blue van was weaving, and his testimony that no other cars were on the road at that time of night (1:43 a.m.), diminish significantly the potential danger posed by this alleged drunk driver.

The majority relies heavily on *U.S. v. Wheat* (8th Cir. 2001) 278 F.3d 722, a lower federal court case. Of course, such cases are not binding on this court. (*People v. Williams* (1997) 16 Cal.4th 153, 190 [66 Cal.Rptr.2d 123, 940 P.2d 710].) Nevertheless, that the majority places such reliance on *Wheat* is telling, for that case explained that "integral to a determination of whether an anonymous tip of erratic driving may justify an investigatory stop" (*Wheat*, at p. 731) is that "[t]he tip . . . contain a sufficient quantity of information to support an inference that the tipster has witnessed an actual traffic violation that compels an immediate stop" (*id.* at p. 732). The majority recognizes this point (maj. opn., *ante*, at p. 1086) and thereafter asserts the tipster in this case "was *presumably* an eyewitness to illegal activity" (*ibid.*, italics added), later suggesting that defendant's alleged reckless driving was "*presumably* viewed by the caller" (*id.* at p. 1087, italics added).

That the majority relies so heavily on its *assumption* the tip came from another driver with personal knowledge defendant was "weaving all over the roadway" substantially undercuts its analysis, for the record contains no such evidence. That the tip was from another driver or any other eyewitness is no more than conjecture; nothing is known of the identity of the tipster or the basis of the tipster's knowledge. The information may have come from a vindictive ex-boyfriend sitting in his home or teenagers making a prank call. Although the majority attempts to gloss over this analytical lacuna by concluding we should "reasonably infer that the tip came from a passing motorist" (for "[w]here else would it have come from?") (maj. opn., *ante*, at p. 1088), it is significant that this alleged motorist neither gave his or her name, nor reported the circumstances in which he or she came to see defendant allegedly "weaving all over the roadway," nor left a cell phone number, nor provided any other information allowing assessment of the tipster's veracity. Had police obtained the name and telephone number of the tipster, this would be a different case.

The high court in *J. L.* could similarly have inferred that the tip the defendant in that case had a gun concealed on his person came from someone with personal knowledge (for "where else would it have come from?"). But it is just this type of logical fallacy the high court rejected. According to *J. L.*, because the tip was an anonymous one, the tipster's reputation for veracity could not be assessed and he or she could not be held accountable if the tip was fabricated. (*J. L.*, *supra*, 529 U.S. at p. 270.) Accordingly, *J. L.* teaches that police must confirm more than merely the innocent details of an anonymous tip before effecting a seizure of the person.

The majority's subsidiary arguments fare no better. That some leeway is permitted in Fourth Amendment cases when cars are involved, due to their mobile nature and the state's heavy regulation of automobiles, is true. (Maj.

opn., *ante*, at pp. 1087–1088.) Once a car is legally stopped on the highway, for example, the driver's failure to produce his or her car registration will permit police to search the car for evidence of such registration. (*In re Arturo D.* (2002) 27 Cal.4th 60 [115 Cal.Rptr.2d 581, 38 P.3d 433].) And an arrest of the driver permits police to search the entire car. (*New York v. Belton* (1981) 453 U.S. 454 [69 L.Ed.2d 768, 101 S.Ct. 2860].) But neither of the concerns expressed (mobility of cars and pervasive state regulation of cars) means police need *less cause* to effect a traffic stop than required to make other detentions.

I find questionable the majority's attempt to distinguish *J. L.*, *supra*, 529 U.S. 266, on the ground the "level of intrusion" of a traffic stop is "considerably less" than the stop-and-frisk at issue in *J. L.* (maj. opn., *ante*, at p. 1087). The defendant in *J. L.* was frisked in view of other people at the bus stop, whereas defendant here, a woman alone in her car, was stopped by police on a deserted highway at nearly 2:00 o'clock in the morning. That the "level of intrusion" in this case was "considerably less" than in *J. L.* does not seem evident to me. In any event, irrespective of one's view of the comparative intrusiveness of the two encounters, the high court has held unequivocally that an automobile stop is a seizure under the Fourth Amendment that must be justified by "at least articulable and *reasonable suspicion* that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law." (*Delaware v. Prouse*, *supra*, 440 U.S. at p. 663, italics added.)

The majority's reliance on *Michigan Dept. of State Police v. Sitz* (1990) 496 U.S. 444 [110 L.Ed.2d 412, 110 S.Ct. 2481] is misguided. (Maj. opn., *ante*, at p. 1087.) In that case, the high court rejected a constitutional challenge to a state's sobriety checkpoint program, at one point noting the low " 'level of intrusion on an individual's privacy caused by the checkpoints,' " as balanced against the state's strong interest in apprehending drunk drivers. (*Sitz*, at p. 449.) A significant factor in permitting such checkpoints was that they snare *everyone* for minor detentions. The high court explained that it was addressing only the checkpoint situation in which all motorists must stop for a few seconds and that "[d]etention of *particular* motorists for more extensive field sobriety testing *may require satisfaction of an individualized suspicion standard*." (*Id.* at p. 451, italics added.) In other words, if police were to focus on one particular person, then individualized suspicion—that is, reasonable cause—would be required to detain that person, irrespective of the "level of intrusion." *Sitz*, then, involved a variation of the special needs cases such as those concerning border searches (*United States v. Ramsey* (1977) 431 U.S. 606 [52 L.Ed.2d 617, 97 S.Ct. 1972]) and school searches (*New Jersey v. T.L.O.* (1985) 469 U.S. 325 [83 L.Ed.2d 720, 105 S.Ct. 733]), where, for reasons other than normal enforcement of the criminal laws, police may dispense with individualized suspicion before effecting a detention or

search. (See also *People v. Hyde* (1974) 12 Cal.3d 158 [115 Cal.Rptr. 358, 524 P.2d 830] [warrantless airport searches justified as administrative regulatory search].) Nothing in *Sitz* suggests that when police focus on a single driver due to suspicions of drunk driving and are not conducting a sobriety checkpoint stopping all drivers, police can detain that driver on less than reasonable cause.

Finally, the majority attempts to justify its holding by claiming that "[p]olice officers undoubtedly would be severely criticized for failing to stop and investigate a reported drunk driver if an accident subsequently occurred." (Maj. opn., *ante*, at p. 1087.) This irrelevant though emotional concern misleadingly suggests that an invasion of personal privacy is justifiable under the Fourth Amendment if such invasion might unmask a criminal or prevent a crime. This view ignores the balance the Fourth Amendment strikes between a person's reasonable expectation of privacy and "the often competitive enterprise of ferreting out crime." (*Johnson v. United States* (1948) 333 U.S. 10, 14 [92 L.Ed. 436, 68 S.Ct. 367].) No doubt the police in *J. L.* would also have been criticized if that defendant subsequently shot someone with the gun he was secreting at the bus stop, but the possibility of such criticism did not convince the high court in that case to dispense with requiring confirmation of the illegal aspects of the anonymous tip.

## III

It is said that the police have a difficult job, and I do not disagree. In this case, however, the burden on the investigating officer was slight: he need only have followed defendant's blue van a short distance to determine whether she was weaving or otherwise violating the traffic laws. The observation of even a small deviation, such as weaving slightly within a lane, may, when coupled with the anonymous tip, have been sufficient to justify a traffic stop. Instead, without confirming any illegal or even suspicious conduct at all, the officer simply pulled her over. I am not persuaded by the majority that this case reasonably can be distinguished from *J. L.*, *supra*, 529 U.S. 266, where the high court held that, when faced with an anonymous tip, police must confirm not only its innocent details but also some aspect of the illegality before detaining a person. The requirement is small, but important. As the high court explained in a different context long ago: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It

is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." (*Boyd v. United States* (1886) 116 U.S. 616, 635 [29 L.Ed. 746, 6 S.Ct. 524].)

Because police failed to sufficiently confirm the anonymous tip before effecting an investigatory detention, I conclude defendant is correct that her detention and the subsequent discovery of evidence of her intoxication violated her rights under the Fourth Amendment to the United States Constitution. Because the majority concludes otherwise, I dissent.

Kennard, J., and Moreno, J., concurred.

Appellant's petition for a rehearing was denied September 13, 2006. Baxter, J., did not participate therein. Kennard, J., Werdegar, J., and Moreno, J., were of the opinion that the petition should be granted.