Filed 10/9/14  P. v. Cowan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | C074693 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 11F07235, 12F07226) |
| v. |  |
| TARAHN JAVIN COWAN, |  |
| Defendant and Appellant. |  |

This case involves two separate jury trials.  In the first case (case No. 11F07235), a jury found defendant Tarahn Javin Cowan guilty of unlawfully driving or taking a car (a black Infiniti) and receiving stolen property (a Dodge Challenger).  In the second case (case No. 12F07226), a jury found defendant guilty of evading a peace officer while the officer's marked vehicle exhibited at least one red lamp and was sounding its siren and evading a peace officer by driving on a highway in a direction opposite to traffic.  The trial court sentenced defendant to prison for a total of 10 years and eight months for both cases.

1

On appeal, defendant contends the trial court erred: (1) in failing to suppress the evidence against him in the first case because there was no reasonable suspicion to detain him; and (2) admitting in both cases the statements he made to police following his detention and arrest for driving or taking the Infiniti. We disagree and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The First Case (Case No. 11F07235)*

A

*Unlawful Driving Or Taking Of The Black Infiniti*

On October 7, 2011, a manager at the Infiniti of Elk Grove car dealership noticed one of its black luxury sports utility vehicles was missing, a 2011 Infiniti QX56 worth approximately $70,000. Surveillance video showed that five days prior, a man had stolen the black Infiniti, which had on it a paper license plate and a license plate frame, both from Beshoff Infiniti, one of Infiniti of Elk Grove's competitors.

Around 1:00 p.m. on October 18, 2011, a detective with the Elk Grove Police Department posted a bulletin with a picture of a 2011 black Infiniti QX56 similar to the one that had been stolen, a "description of the vehicle," "a short synopsis of the circumstances surrounding the disappearance of the vehicle," and a statement that a "male with a light-colored sweatshirt" had stolen the vehicle.

At 5:10 p.m. on the same day, Elk Grove Police Department Detective Matthew Sanchez was in an unmarked car with two officer trainees, Elk Grove Police Officers Lindsey Goesch and Nicole Monroe, on Mack Road heading back to the police station. None of them were in uniform. Detective Sanchez saw a black Infiniti QX56 with paper plates on it that said " 'Beshoff Infiniti.' " The Infiniti attracted Detective Sanchez's attention because of the bulletin. The Infiniti was "swerving in and out of traffic changing lanes" with "no turn signals" and driving "much faster than the flow of traffic, trying to get somewhere in a hurry." Detective Sanchez was not able to keep up with the

2

Infiniti.  The driver continued weaving in and out of traffic proceeding onto two freeways before getting off the freeway and pulling into an Arco AM/PM market.

Detective Sanchez pulled his car directly behind the Infiniti to prevent the Infiniti from leaving.  Detective Sanchez walked to the driver's side of the Infiniti.  Officers Goesch and Monroe walked to the passengers' side.  Defendant, the driver, got out of the Infiniti.  Detective Sanchez recognized defendant, "drew [his] weapon," and had defendant put his hands in the air.  Detective Sanchez ran the Infiniti's vehicle identification number through the police stolen vehicle system and discovered it was stolen.  Detective Sanchez arrested defendant, handcuffed him, and made him sit on the curb.

Detective Sanchez searched defendant's pants' pocket and found a "key fob" for the Infiniti.  The detective asked defendant if he wanted to go back to the Elk Grove Police Department and speak with the detective "regarding this."  Defendant responded, "no, he needed to get to jail so he could get bailed out."  The officers searched the Infiniti, while the detective watched defendant sit on the sidewalk.

Then, in the presence of defendant, Detective Sanchez told the officers that defendant "had led Elk Grove Police Officers on numerous pursuits prior to him going to prison for stealing cars."  Defendant said, "he was 37 and 1 in pursuits and that he was only 36 and 1 when he got out" of prison 20 days before.  Defendant "boast[ed] about how he outran the [police] helicopter from Sacramento to Redding, California" and "all the agencies in between."  Even if the detective had lights and sirens on his patrol car, he "would have never caught [defendant.]  It didn't matter what [the detective] was driving."  Detective Sanchez then told the officers that defendant steals only upscale vehicles.  Defendant responded that the Infiniti was worth $66,000.

B

*Receiving Stolen Property (A Dodge Challenger)*

On January 6, 2012, defendant's girlfriend called 911 and said that defendant had just broken into her house. She also said that defendant had a stolen white Challenger that was now being housed in her garage. An officer from the Sacramento Police Department went to the house and found the Dodge Challenger in the garage. A check of the Challenger's vehicle identification number revealed it had been reported stolen.

II

*The Second Case (Case No. 12F07226)*

On October 25, 2012, at 2:54 p.m., Officer Goesch was in the parking lot of a WinCo Foods grocery store when she heard a call on her radio that detectives nearby were having trouble stopping a silver Lexis. Officer Goesch was in uniform, driving a marked patrol car. She turned on her lights and siren and drove to Highway 99 where the pursuit was taking place. In the the vicinity, she saw the Lexis coming toward her in the fast lane "at a very high rate of speed." The Lexis passed her going at least 100 miles per hour. The officer "accelerated after it," but the Lexis also "accelerat[ed] and pull[ed] away" until the officer lost sight of the Lexis.

Two police detectives from the Elk Grove Police Department, Derrick Metzger and his partner, James Kang, picked up the pursuit. During the pursuit, the Lexis crossed the center double solid yellow lines and began travelling into the oncoming westbound lane of traffic. Eventually, they were able to stop the driver, who was defendant.

At trial, Officer Goesch testified about the statements defendant had made on October 18, 2011, after he had been arrested.

4

DISCUSSION

I

*The Court Properly Denied Defendant's Suppression Motion Made In The First Case*

*Because Detective Sanchez Had Reasonable Suspicion To Detain Defendant*

Defendant contends the trial court erred in denying his motion to suppress the evidence against him in the first case because there was no reasonable suspicion to detain him. We disagree, because the police had two reasons to detain him: (1) the Infiniti he was driving matched the description of the stolen Infiniti; and (2) he had violated the Vehicle Code. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082 [a police officer may "detain a motorist on reasonable suspicion that the driver has violated the law"].)

First, Detective Sanchez had reason to detain defendant because he had a reasonable suspicion that defendant was driving the stolen Infiniti. Detective Sanchez had read the police bulletin posted about 1:00 p.m. about a man who had stolen a 2011 black Infiniti. That Infiniti had a paper license plate and a license plate frame, both from Beshoff Infiniti. About four hours later, Detective Sanchez saw a black Infiniti QX56 with paper plates on it that said " 'Beshoff Infiniti.' " As Detective Sanchez stated, the Infiniti attracted his attention because of the bulletin. This was sufficient by itself to detain defendant, who was the driver of the Infiniti.

Second, Detective Sanchez had reason to detain defendant because he violated the Vehicle Code. Detective Sanchez testified the Infiniti was "swerving in and out of traffic changing lanes" with "no turn signals" and driving "much faster than the flow of traffic, trying to get somewhere in a hurry." The failure to use a signal in traffic is a violation of the Vehicle Code. (Veh. Code, § 22107 ["No person shall turn a vehicle . . . upon a roadway until such movement can be made with reasonable safety and then only after the giving of an appropriate signal . . . in the event any other vehicle may be affected by the movement"].)

5

Based on these two reasons, the trial court properly denied the motion to suppress the evidence.

## II

*The Trial Court Did Not Violate Defendant's Federal And State Constitutional Rights Against Self-Incrimination By Admitting In Both Trials Defendant's Statements Following His Arrest For Unlawfully Taking Or Driving The Infiniti*

Defendant contends the court violated his Fifth Amendment right against self-incrimination and analogous state court right when it admitted in both cases the statements he made in the presence of Detective Sanchez, Officer Goesch, and Officer Monroe following his arrest.[1] On appeal, defendant argues that the detective should have known the statements the detective made that were directed to the officers and made in defendant's presence were likely to elicit an incriminating response from defendant. We disagree.

## A

*Facts Surrounding Defendant's Statements*

The circumstances surrounding the statement were as follows. Detective Sanchez had just arrested defendant, handcuffed him, and made him sit on the curb. The detective asked defendant if he wanted to go back to the Elk Grove Police Department and speak with the detective "regarding this." Defendant responded, "no, he needed to get to jail so he could get bailed out." In the presence of defendant, Detective Sanchez told the officers that defendant "had led Elk Grove Police Officers on numerous pursuits prior to him going to prison for stealing cars." Defendant said, "he was 37 and 1 in pursuits and that he was only 36 and 1 when he got out" of prison 20 days before. Defendant

---

[1] Defendant raises this same issue as contentions II and III of his brief (one contention for each case), but the underlying legal arguments are the same. Thus, we address them as one issue.

6

"boast[ed] about how he outran the [police] helicopter from Sacramento to Redding, California" and "all the agencies in between." He told Detective Sanchez that even if the detective had lights and sirens on his patrol car, he "would have never caught [defendant.] It didn't matter what [the detective] was driving." Detective Sanchez then told the officers that defendant steals only upscale vehicles. Defendant responded that the Infiniti was worth $66,000.

B

*There Was No Interrogation*

The People may not use statements stemming from a "custodial interrogation" of the defendant unless they demonstrate the use of procedural safeguards effective to secure the Fifth Amendment's privilege against self-incrimination. (*People v. Mickey* (1991) 54 Cal.3d 612, 647-648.) "The phrase 'custodial interrogation' is crucial." (*Id*. at p. 648.) " '[I]nterrogation' " " 'refers not only to express questioning, but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " (*Id*. at p. 648, quoting *Rhode Island v. Innis* (1980) 446 U.S. 291, 301 [64 L.Ed.2d 297, 308], fn. omitted.)

Here, defendant's incriminating responses were made after Detective Sanchez told the officers that defendant "had led Elk Grove Police Officers on numerous pursuits prior to him going to prison for stealing cars" and steals only upscale vehicles. Detective Sanchez's statements were not coercive and did not call for any response, especially from defendant as the statements were not even directed at him. Moreover, defendant was a sophisticated criminal who knew to ask to be taken to jail so that he could have bail posted for him and be released, further belying defendant's claim that he would have felt compelled to respond. Finally, defendant's statements were boastful, which undermines defendant's claim that the detective's statements were " 'psychological ploys' " intended to elicit incriminating responses. Thus, because Officer Sanchez's statements were not

an interrogation, there was no violation of defendant's Fifth Amendment right against self-incrimination when he volunteered his incriminating statements.

DISPOSITION

The judgment is affirmed.


      ROBIE      , Acting P. J.


We concur:


      MURRAY      , J.


      DUARTE      , J.