Filed 5/9/13  P. v. Hix CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>RONALD STEWART HIX,<br><br>        Defendant and Appellant. | B244640<br><br>(Los Angeles County<br>Super. Ct. No. 1PK05401) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Christian R. Gullon, Judge.  Affirmed.

Law Offices of Chad R. Maddox and Chad R. Maddox for Defendant and Appellant.

Jackie Lacey, District Attorney, Phyllis Asayama and Roberta Schwartz, Deputy District Attorneys for Plaintiff and Respondent.

Defendant and appellant Ronald Stewart Hix (defendant) appeals from the judgment entered following his guilty plea and conviction of driving a vehicle while having a blood alcohol level of .08 percent or higher, a misdemeanor in violation of Vehicle Code section 23152, subdivision (b). Defendant contends the trial court erred by denying his motion to suppress evidence. We disagree and affirm the judgment.

## BACKGROUND

A misdemeanor complaint filed by the Los Angeles County District Attorney alleged that on or about August 11, 2011, defendant drove a vehicle while being under the influence of alcohol, in violation of Vehicle Code section 23152, subdivision (a), and drove a vehicle while having a blood alcohol level of .08 percent or higher, in violation of Vehicle Code section 23512, subdivision (b).

Defendant filed a motion to suppress evidence pursuant to Penal Code section 1538.5 on the ground that his arrest was illegal because the arresting officer had no reasonable suspicion or probable cause to stop and detain him. Defendant's motion to suppress was heard and testimony was taken in connection with that motion on January 24, 2012.

Officer Rivera, a patrol officer assigned to the City of Pomona with 20 years of experience, testified that on August 11, 2011, at 1:00 a.m., he was driving northbound on San Antonio Street when he saw a vehicle stopped on the right curb with its brake lights on. The driver of the vehicle was talking to a female pedestrian standing on the curb. As Rivera's vehicle approached, defendant's car pulled away from the curb, turning eastbound onto Hawthorne Place. Rivera stopped and asked the pedestrian what was going on, and the pedestrian responded that the driver had been trying to start a conversation with her. Rivera asked the pedestrian if she knew the driver, and she said no. When asked by the prosecutor whether Rivera had an opinion as to whether or not the pedestrian was a prostitute, Rivera responded that it "wouldn't surprise me," given the time of day and the area, which was known for narcotics and prostitution.

Rivera then proceeded to follow defendant's vehicle as it proceeded eastbound on Hawthorne Place, a residential street with cars parked along both sides. Defendant was

2

driving within the speed limit, his vehicle was not weaving back and forth, and Rivera observed no Vehicle Code violation. Rivera noticed, however, that defendant's vehicle was veering toward the cars parked along the south curbline and came within a foot of hitting those cars, even though there was ample room on the street -- approximately 25 feet -- between the cars parked on either side. Rivera then "conducted a traffic stop, a welfare check to find out if the driver was okay." He did so by activating the red light on his black and white patrol car, thereby indicating that he wanted defendant to pull over. Defendant was in the process of making a southbound turn from Hawthorne Place onto Mountain View Avenue, and Rivera observed that the front tire of defendant's vehicle came within three feet of striking the curb.

At the conclusion of Officer Rivera's testimony, the trial court heard argument from the parties and denied defendant's motion to suppress on the grounds that the officer had a reasonable suspicion of criminal activity that warranted further investigation and that the stop was a reasonable exercise of the officer's community caretaking function.

Defendant reserved the right to appeal the trial court's denial of the motion to suppress and pleaded guilty to driving a vehicle while having a blood alcohol content of .08 percent or higher. The charge of driving a vehicle while under the influence of alcohol was dismissed. Defendant was placed on three years of summary probation and was ordered to pay fines, fees, and penalty assessments and to comply with the terms and conditions of his probation.

Defendant filed a timely notice of appeal, and the Appellate Division of the Los Angeles County Superior Court affirmed the conviction in case No. BR049880. On November 13, 2012, we granted defendant's petition to transfer and ordered the case transferred to this court. (Cal. Rules of Court, rules 8.1000, 8.1002.)

**DISCUSSION**

## I. Applicable legal principles

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by law enforcement authorities. To be considered reasonable, a search and seizure must generally be conducted pursuant to a valid warrant

3

issued by a judicial officer. A warrantless search or seizure may be conducted only if it comes within a specific judicially recognized exception. (*Cady v. Dombrowski* (1973) 413 U.S. 433, 439 (*Dombrowski*).) One such exception is that an officer may stop and detain a motorist on reasonable suspicion that the driver has violated the law. (*People v. Wells* (2006) 38 Cal.4th 1078, 1082.) For a detention to be reasonable, the detaining officer's suspicions must be supported by "specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) Another exception, known as the community caretaking exception, applies when the search or seizure is conducted as an exercise of a law enforcement officer's community caretaking function. (See *Dombrowski, supra*, at pp. 441, 447-448; *People v. Madrid* (2008) 168 Cal.App.4th 1050, 1055-1056.)

## II. Reasonable suspicion of criminal activity

Substantial evidence supports the trial court's determination that the facts and circumstances known to Officer Rivera support an objective suspicion that defendant was driving under the influence of alcohol or a controlled substance, in violation of the Vehicle Code. The trial court found that Officer Rivera's account was credible, and we may not review that finding. (*People v. Jones* (1990) 51 Cal.3d 294, 314 [credibility of a witness and the truth or falsity on which that determination depends is the exclusive province of the trier of fact].)

Officer Rivera was an experienced police officer with 20 years of experience. He observed defendant's vehicle stopped at approximately 1:00 a.m. and defendant conversing with a pedestrian in an area of Pomona known for narcotics and prostitution. Rivera followed defendant's vehicle onto a residential street where cars were parked on either side. Although defendant was proceeding slowly at only 25 miles per hour, and there was ample room on the street between the cars parked on either side of the street, defendant's vehicle was veering toward the cars parked along the southern curbline and came within a foot of striking those cars. Rivera also observed defendant attempting to

4

make a southbound turn during which the front tire of defendant's vehicle came close to striking the southwest curb.

The facts presented support a reasonable suspicion of criminal activity on the part of defendant. Defendant's veering toward parked cars and coming within a foot of hitting those cars while proceeding at a low rate of speed on a street with ample room to maneuver his vehicle, his near miss of the curb, and the fact that these things occurred at 1:00 a.m. in an area known for narcotics dealing were sufficient to support an objective suspicion that defendant was driving under the influence of alcohol or narcotics. Defendant accordingly was not detained in violation of the Fourth Amendment.

## III.  Community caretaking exception

### A.  General principles

"The community caretaking exception to the warrant requirement derives from the expanded role undertaken by the modern police force." (*People v. Madrid, supra*, 168 Cal.App.4th at p. 1055.)  "'The policeman, as a jack-of-all emergencies, has "complex and multiple tasks to perform in addition to identifying and apprehending persons committing serious criminal offenses"; by default or design he is also expected to "aid individuals who are in danger of physical harm," "assist those who cannot care for themselves," and "provide other services on an emergency basis."'  [Citation.]"  (*Id.* at p. 1056, fn. 3.)  This is especially true with regard to motor vehicles.  As recognized by the United States Supreme Court in *Dombrowski*:  "Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office.  Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature.  Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection,

5

investigation, or acquisition of evidence relating to the violation of a criminal statute." (*Dombrowski, supra*, 413 U.S. at p. 441.)

*Dombrowski* concerned a warrantless police search of an impounded vehicle owned by a defendant who was also a police officer. (*Dombrowski, supra*, 413 at p. 435.) The defendant, who was intoxicated and incoherent at the time of his arrest, did not have his service revolver on his person. (*Id.* at p. 436.) The purpose of the search was to retrieve the revolver as "standard" police department procedure in order "to protect the public from the possibility that a revolver would fall into untrained or perhaps malicious hands." (*Id.* at p. 443.) The revolver, and other evidence leading to the defendant's subsequent murder conviction, were recovered from the defendant's vehicle. (*Id.* at p. 437.) The United States Supreme Court held the warrantless search of the vehicle to be constitutionally valid because the officers reasonably believed the vehicle contained a gun and was vulnerable to intrusion by vandals. (*Id.* at p. 448.)

The California Supreme Court extended the community caretaking exception set forth in *Dombrowski* to the search of a home that appeared to have been burglarized in *People v. Ray* (1999) 21 Cal.4th 464. The court in *Ray* noted that police officers regularly perform "'community caretaking functions' -- helping stranded motorists, returning lost children to anxious parents, assisting and protecting citizens in need." (*Id.* at p. 467.) The court distinguished the warrant exception for exigent circumstances from the community caretaking exception and concluded the "emergency aid" doctrine was a subcategory of the latter exception. (*Id.* at p. 471.) The "emergency aid" component of the community caretaking exception "requires specific, articulable facts indicating the need for "'swift action to prevent imminent danger to life or serious damage to property . . . .'" [Citation.]' [Citation.]" (*Id.* at pp. 472-473.) The court in *Ray* further noted, however that "circumstances short of a perceived emergency may justify a warrantless entry, including the protection of property, as 'where the police reasonably believe that the premises have recently been or are being burglarized.' [Citation.]" (*Id.* at p. 473.) The Supreme Court set forth the following standard for applying the exception: "The appropriate standard under the community caretaking exception is one of reasonableness:

6

Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions? . . . '[I]n determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or "hunches," but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary.' [Citation.]" (*Id.* at pp. 476-477.)

### B. *The community caretaking exception may justify a vehicle stop*

Defendant in the instant case contends the community caretaking exception should not be applied to permit the stop of a vehicle and the detention of the person inside. This argument was considered and rejected by the First Appellate District in *People v. Madrid*, a case involving a vehicle stop based on a police officer's observation that a passenger entering the vehicle was sweating, walked with an "unsteady" gait, and appeared to be under the influence of alcohol or drugs, to have a medical problem, or to have been a victim of an assault. The officer stopped the defendant's vehicle "'to check on [the passenger's] well being'" and after questioning the driver, recovered hypodermic needles and heroin. (*People v. Madrid, supra*, 168 Cal.App.4th at pp.1053-1054.) The defendant unsuccessfully moved to suppress the evidence seized by the police and was subsequently convicted of possession of heroin for sale. In appealing his conviction, the defendant argued that the community caretaking exception should not apply to warrantless vehicle stops. The First Appellate District rejected a categorical exemption for vehicle stops: "We are unwilling to adopt appellant's position that the reasonableness of a vehicle stop can never rest on the officer's perception that an occupant's welfare requires this action." (*Id.* at p. 1058.)

The court in *Madrid* applied our supreme court's reasoning in *Ray* that "the community caretaking exception applies when police officers 'acted reasonably to protect the safety and security of persons and property' [citation], that is, when 'a prudent and reasonable officer [would] have perceived a need to act in the proper discharge of his or her community caretaking functions' [citation]." (*People v. Madrid, supra*, 168

7

Cal.App.4th at p. 1058.) We agree with the First Appellate District's reasoning in *Madrid* that the community caretaking exception may justify a warrantless vehicle stop of a moving vehicle.

### C. *The community caretaking exception justified the vehicle stop*

After determining that the community caretaking exception may justify a vehicle stop, the court in *Madrid* concluded that a reasonable officer would not have perceived the need to do so under the circumstances presented in that case. (*People v. Madrid, supra*, 168 Cal.App.4th at p. 1058.) The court in *Madrid* cited as "instructive" the approach taken by the Texas court of criminal appeals in *Wright v. State* (Tex.Crim.App.1999) 7 S.W.3d 148, in which a deputy sheriff stopped a vehicle after observing a rear passenger lean out the rear window and vomit. The *Wright* court acknowledged that the community caretaking exception to the warrant requirement may apply in such circumstances and set forth a nonexclusive list of factors relevant to whether the officer acted reasonably in stopping the vehicle to determine whether the individual needed assistance: "'(1) the nature and level of the distress exhibited by the individual; [¶] (2) the location of the individual; [¶] (3) whether or not the individual was alone and/or had access to assistance independent of that offered by the officer; and [¶] (4) to what extent the individual -- if not assisted -- presented a danger to himself or others.' [Citation.]" (*People v. Madrid, supra*, 168 Cal.App.4th at p. 1059.) The court in *Madrid* applied these factors and concluded the vehicle stop in the case before it was not reasonable.

The court in *Madrid* first determined that the stop had been based on the officer's observations of the passenger, and that "the balance would weigh more heavily in favor of the officer's action if the officer believed the *driver* was in great distress; an extremely ill driver is a danger not only to himself but to other members of the public as well. [Citation.]" (*Madrid, supra*, 168 Cal.App.4th at pp. 1059-1060.) Second, the court in *Madrid* determined that no facts indicated that the defendant or his passenger were in need of help. Before the stop, the passenger observed by the detaining officer "had exhibited a low level of distress." (*Id.* at p. 1060.) The only facts the officer articulated

8

as grounds for detention were that the passenger walked with an unsteady gait, at one point used a nearby shopping cart to stop himself from falling, and appeared to be sweating. Yet the passenger was able to walk 50 feet to the defendant's vehicle without assistance, he was not alone, and neither defendant nor the passenger indicated they were in need of help. The court further determined that nothing about the location "sitting in the passenger seat of a vehicle being lawfully driven through a shopping center parking lot," suggested that the passenger or defendant were in need of additional aid. (*Ibid.*) Finally, the court in *Madrid* determined that the facts did not support a reasonable conclusion that the passenger presented a danger to himself or others. The court rejected the argument that stopping the vehicle was justified in order to avert a possible drug overdose, because an inference by the officer that the passenger was suffering from a drug overdose, based solely on the officer's observations that the passenger was walking with an unsteady gait and sweating was "unreasonably speculative." (*Id.* at p. 1060.)

In concluding that the stop could not reasonably be justified under the community caretaking exception, the court in *Madrid* observed that "'[R]easonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers,'" [citation].' [Citation.] In engaging in this weighing process, courts must act as vigilant gatekeepers to ensure that the community caretaking exception does not consume the warrant requirement. [Citation.]" (*People v. Madrid, supra*, 168 Cal.App.4th at p. 1058.)

Applying the factors used in *Madrid* to the instant case, we conclude that detention of defendant's vehicle was justified under the community caretaking exception. Here, unlike *Madrid*, defendant was the driver and not the passenger of the vehicle. He was unaccompanied by any passenger who could assist him. Officer Rivera observed that defendant's vehicle was veering toward cars parked on the street and came within a foot of hitting those cars, despite ample room on the street for his car to proceed without coming too close to the parked cars. While making a southbound turn, the front wheel of defendant's vehicle came close to hitting the southwestern curb. These observations would lead a reasonable officer to conclude that defendant might be in need of assistance,

9

either because he was disoriented or because he was having difficulty controlling his vehicle. Officer Rivera's detention of defendant's vehicle was a reasonable exercise of his community caretaking function. Defendant was not detained in violation of the Fourth Amendment.

**DISPOSITION**

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
FERNS


_____
\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

10