Filed 5/1/15  P. v Gonzalez CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B254516 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA083411) |
| v. | |
| ARLENE GONZALEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Katherine Mader, Judge.  Affirmed.

H. Russell Halpern for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Mark E. Weber, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Arlene Gonzalez appeals from the judgment entered following her plea of guilty to second degree burglary, following the denial of a suppression motion (Pen. Code, §§ 459, 1538.5). The court suspended imposition of sentence and placed Gonzalez on probation for three years. We affirm.

## FACTUAL SUMMARY

*Appellant's May 2013 Suppression Motion and the July 2013 Preliminary Hearing Testimony.*[1]

1. *Appellant's Suppression Motion at the Preliminary Hearing.*

In May 2013, appellant filed a Penal Code section 1538.5 suppression motion arguing the initial stop of a minivan she was driving on March 2, 2013, violated the Fourth Amendment. The motion was heard concurrently with appellant's July 16, 2013 preliminary hearing.

2. *Officer Barbani's Initial Preliminary Hearing Testimony.*

During appellant's preliminary hearing, Beverly Hills Police Officer Matthew Barbani, the sole witness at the hearing, testified as follows. On March 2, 2013, Barbani was assigned to patrol and had been a peace officer for about six years. About 3:30 a.m., he received a radio call about a suspicious person.[2] The content of the call was "red minivan seen slowly driving through the alley, possibly looking into carports, behind apartment buildings." The prosecutor asked if "they" gave the address where the minivan was last seen, and Barbani replied, "First was at 336 South Doheny, last seen driving north, slowly driving north in the alley."

Two to four minutes after Barbani received the call, he saw a red minivan driving northbound, "five, ten miles per hour," and "exiting the 200 block of Doheny and

---

[1] The facts of the present offense are not pertinent to this appeal. It is sufficient to observe the record reflects on March 2, 2013, appellant committed second degree burglary in Beverly Hills.

[2] The magistrate received, "for purposes of probable cause only," Barbani's testimony he received a radio call about a suspicious person.

2

Wetherly alley." (*Sic*.)  The distance between the 200 block of Doheny, and 336 South Doheny Drive, was one block.  After Barbani saw the minivan, he conducted a traffic stop of the vehicle.  Appellant was its driver.  Appellant later effectively told Barbani she was in the alley looking for laundry rooms in open carports in apartment complexes so she could take money from the washers and dryers.  Appellant also told Barbani she had burglarized rooms and had taken money from the machines.

Barbani transported appellant to the alley and she pointed out two locations where she believed she had committed the burglaries.  The address of the first location was 260 South Doheny in Beverly Hills.  Barbani testified the location was less than a block "from the address where the caller stated the car was seen."  The address of the second location was 320 South Doheny Drive, which Barbani testified was about a block "from the location of the call."  Barbani testified there were auto burglaries in the general vicinity where he stopped appellant and in the same time frame that he contacted appellant.  However, he did not know this when he stopped appellant.

Barbani also testified as follows during cross-examination.  Only two minutes passed from the time he received the call to the time he arrived and contacted appellant.  The call was a vehicle was driving slowly down an alley.

During the 30-minute period before Barbani stopped the minivan, he received no report a burglary had occurred near the location.  When Barbani saw the minivan prior to stopping it, he had no evidence the minivan was not being driven by an apartment building tenant.  When Barbani stopped the minivan, he was going to investigate what it was doing in the alley.  He asked for appellant's driver's license and for other information.  This was Barbani's investigation of suspicious activity.

3. *The Parties' Argument and the Magistrate's Tentative Ruling.*

After the prosecutor rested at the preliminary hearing, the court and parties discussed whether the initial stop of the minivan was lawful.  The magistrate tentatively indicated as follows.  Barbani saw the minivan in the general area two to four minutes after the call, and the minivan had travelled one block.  A minivan travelling five or ten

3

miles per hour was consistent with someone driving slowly in the alley, but at that speed the minivan, two to four minutes after the call, would have been blocks away, not merely a block away; therefore, the minivan had stopped for a period in the alley, and had done so at 3:30 a.m. This was highly suspicious and justified the stop.

Appellant argued Barbani overstated how long it took for him to arrive at the scene after the call. The court permitted appellant to reopen cross-examination on that issue.

4. *Barbani's Additional Preliminary Hearing Testimony.*

Barbani subsequently testified as follows during cross-examination. When Barbani received the call that there was a "suspicious vehicle," he was driving on Doheny Drive, north of Wilshire. He was one to three blocks away. Barbani arrived at the location very quickly.

Appellant asked Barbani whether Barbani, by referring to two to four minutes, was trying to testify the period was very short. Barbani replied, "That's about the right time, between two to four minutes." Appellant asked if it was the right time for driving three blocks at 35 miles per hour, and Barbani replied, "Somewhere around there. I don't remember specifically the exact location of where I was when the radio call was dispatched." Barbani travelled 35 miles per hour during whatever period it took for him to "go four blocks" to arrive at the location. Barbani did not time how long it took him to arrive; therefore he did not know what time he received the call, or what time it was when he arrived at the location.

5. *The Magistrate's Ruling.*

The magistrate found as follows. Barbani continued to testify it was two to four minutes from the time he received the call to the time he arrived at the scene. Moreover, additional time must have elapsed prior to the call, i.e., (1) the period from the time the caller observed the events to the time the caller reported them, and (2) the period from the time the caller reported them to the time the dispatcher broadcast the call.

4

The magistrate concluded as follows. This was a close case. Nonetheless, the caller indicated the minivan was driving slowly, "possibly looking at carports." This was conveyed to the dispatcher, the dispatcher broadcast the call, and Barbani received it. Barbani arrived at the location two to four minutes later, and Barbani detained appellant "only about one alley block away from where the reporting call came in." (*Sic*.) The only way this could have happened was if appellant "had been driving, possibly looking at carports, stopped, and then began driving again just before the officer arrived." At some point, the minivan was stopped in the alley at 3:30 a.m. The combination of events was suspicious and justified the stop. The magistrate denied appellant's Penal Code section 1538.5 suppression motion.

6. *Appellant's Penal Code Section 995 Motion, Renewed Penal Code Section 1538.5 Motion, and the Trial Court's Rulings.*

After the information was filed, appellant, on August 13, 2013, filed a Penal Code section 995 motion, and a renewed Penal Code section 1538.5 motion, each on the ground the initial stop of the minivan was an unlawful detention and her confession should have been suppressed as the product of the unlawful detention.

At the October 4, 2013 hearing on the motions, the court indicated it had reviewed the preliminary hearing transcript. The court emphasized this was a very close case, but concluded the stop was lawful because it was 3:30 a.m., there had been burglaries in the area, and there was a call about suspicious activity and someone possibly looking into carports. The court observed the magistrate logically had inferred the minivan had been "stopping and starting and possibly looking into carports," which corroborated the caller's information. The court denied appellant's Penal Code section 995 motion and renewed Penal Code section 1538.5 motion.

***ISSUE***

Appellant claims the initial stopping of her minivan violated the Fourth and Fourteenth Amendments.

5

## *DISCUSSION*

Appellant claims as previously indicated. We reject her claim. Respondent concedes Barbani signaled for the minivan to stop and he conducted an investigative detention. The remaining issue is whether the initial stop of the minivan and concomitant detention of appellant were lawful. " ' "A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the *totality of the circumstances*, provide some *objective* manifestation that the person detained *may* be involved in criminal activity." [Citation.] Ordinary traffic stops are treated as investigatory detentions for which the officer must be able to articulate specific facts justifying the *suspicion* that a crime is being committed.' [Citation.] . . . 'All that is required is that, on an *objective* basis, the stop "*not be unreasonable* under the circumstances." ' [Citation.]" (*People v. Suff* (2014) 58 Cal.4th 1013, 1053-1054 (*Suff*), italics added.)

In *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 147 (*Letner*), our Supreme Court observed the reasonable suspicion standard of *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889] is not particularly demanding. (*Letner*, at p. 146.) *Letner* also observed, " 'the determination of reasonable suspicion must be based on commonsense judgments and *inferences* about human behavior.' [Citation.]" (*Ibid*., italics added.)

*Letner* stated, "possible innocent explanations for an officer's observations do not preclude the conclusion that it was reasonable for the officer to *suspect* that criminal activity was afoot. ' "Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal . . . ." [Citation.]' ([Citation]; see also [*United States v. Arvizu* (2002) 534 U.S. 266, 274 [151 L.Ed.2d 740] [the totality-of-the-circumstances standard precludes a 'divide-and-conquer analysis' under which factors that are 'readily susceptible to an innocent explanation [are] entitled to "no weight" '].)" (*Letner, supra,* 50 Cal.4th at p. 148.)

Further, " '[A]lmost without exception in evaluating alleged violations of the Fourth Amendment the [high court] has first undertaken an objective assessment of an

6

officer's actions in light of the *facts and circumstances then known* to [the officer].' " (*People v. Sanders* (2003) 31 Cal.4th 318, 334, italics added.) "Law enforcement officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person." [Citations.]' [Citation.]" (*People v. Hernandez* (2008) 45 Cal.4th 295, 299.) However, " ' "[T]he fact that the *officer* does not have the *state of mind* which is hypothecated by the *reasons* which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, *viewed objectively*, justify that action." ' [Citation.]" (*People v. Woods* (1999) 21 Cal.4th 668, 680, italics added.)

In the present case, Barbani received a call about "a suspicious person" and a "red minivan seen slowly driving through the alley, possibly looking into carports, behind apartment buildings." The caller(s) (hereafter, caller) indicated the minivan was first seen at 336 South Doheny, and last seen slowly driving north in the alley. This information permitted the reasonable inference the caller personally witnessed continuing driving and, during that time, concluded the occupant of the minivan was looking into carports behind apartment buildings.

Moreover, it may reasonably be inferred the caller reported the minivan because the caller was unfamiliar with it, a fact which, in turn, supports the reasonable inference the caller was familiar with vehicles that frequented the area and/or the caller was a neighborhood resident. We note the magistrate inferred Barbani detained appellant about a block from "where the reporting call came in."

Further, based on the call, Barbani reasonably could have inferred an alley adjacent to apartment carports provided an opportunity for the commission of automobile, carport, or even residential burglaries. The alley was behind apartment buildings; therefore, Barbani reasonably could have inferred the alley was in an isolated location that would decrease the likelihood crimes committed there would be detected.

7

The minivan was in the alley at 3:30 a.m. The reduced visibility of nighttime decreased the likelihood crime committed in the alley, or the crime's perpetrator, would be detected. Barbani, for purposes of establishing probable cause, testified the call was about a suspicious person. In response to questioning by appellant, Barbani testified (without limitation as to the admissibility of his testimony) that he received a call about a suspicious vehicle and he was investigating suspicious activity.

Barbani, two to four minutes after the call, arrived to see a red minivan proceeding northbound (as the caller had indicated it was) about five to ten miles per hour, and exiting the alley of the 200 block of Doheny and Wetherly. We agree with the magistrate and trial court that, considering the total distance the minivan travelled and the total period from the time the caller first observed the minivan to the time Barbani stopped it (including the period of two to four minutes from the time of the call to the time of the stop), a reasonable inference is the minivan stopped at least once during its slow driving in the alley. Indeed, that inference suggested the occupant may have stopped and may have quickly committed an automobile or carport burglary.

Based on the totality of the circumstances, including the call, and the circumstances and corroborating events that occurred after the call but just prior to the stop, we conclude Barbani reasonably could have suspected just prior to the stop that he was looking at a minivan that had been engaged in what the caller had reported was, in essence, casing activity in preparation for a burglary.

We note that, in light of Barbani's testimony, it appears the caller was anonymous. *People v. Wells* (2006) 38 Cal.4th 1078 (*Wells*) is illuminating on this issue. In *Wells*, our Supreme Court concluded police lawfully may stop a vehicle and detain its driver based on an anonymous phoned-in tip that accurately describes the vehicle and its location and relates that a *possibly* intoxicated person is behind the wheel, weaving all over the roadway. Moreover, the stop is permissible even though there is no corroboration of the *criminal* details of the tip. (*Id*. at pp. 1080-1081, 1083, 1088.)

8

*Wells* supports the conclusion the instant stop was lawful. First, *Wells* observed a report of a possibly intoxicated highway driver, weaving all over the roadway, posed a grave and immediate risk to the public, and police would be severely criticized for failing to stop such a driver if an accident occurred. *Wells* noted, "where a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances . . . .' [Citation.]" (*Wells, supra*, 38 Cal.4th at p. 1087.) Similarly, a report of possible casing activity in preparation for a burglary poses a serious, if not grave, and immediate risk to residents, and police would be severely criticized for failing to stop a vehicle containing a reported person engaging in casing activity if a burglary subsequently occurred.

Second, *Wells* stated, "doubts regarding the tipster's reliability and sincerity are significantly reduced in the setting of a phoned-in report regarding a contemporaneous event of reckless driving presumably viewed by the caller. Instances of harassment presumably would be quite rare. [Citations.]" (*Wells*, *supra*, 38 Cal.4th at p. 1087.) This is also true in connection with a phoned-in report regarding a contemporaneous event of casing activity.

Third, *Wells* stated, "the relatively precise and accurate description given by the tipster in the present case regarding the vehicle type, color, location, and direction of travel, all confirmed by the investigating officer within minutes of receiving the report, enhanced the reliability of the tip. [Citation.] The investigating officer's inability to detect any erratic driving on defendant's part is not significant. Motorists who see a patrol car may be able to exercise increased caution. Additionally, the officer in this case stopped defendant's van immediately after spotting it." (*Wells*, *supra*, 38 Cal.4th at p. 1088.) The above is largely true in the present case. Indeed, as discussed below, in the present case, Barbani was able to detect evidence consistent with casing activity.

Finally, *Wells* observed, "[v]iewing the totality of circumstances in the present case, we are convinced that the officer's traffic stop was justified by reasonable suspicion of criminal activity." (*Wells, supra*, 38 Cal.4th at p. 1088.) *Wells* later stated, "the

9

tipster's information regarding the van and its location was sufficiently precise, and its report of a motorist 'weaving all over the roadway' demanded an immediate stop to protect both the driver and other motorists. The tip reported contemporaneous activity and its 'innocent' details were fully corroborated within minutes of the report." (*Id.* at p. 1088.) The above is largely true in the present case, except the present case involves a caller's report of possible casing activity that demanded an immediate stop to protect residents.

In a different respect, the instant case presents a stronger factual predicate than that in *Wells. Wells* was a case in which the officer's observations corroborated the innocent details, but not the *criminal* details, of the caller's report. On the other hand, Barbani's observations corroborated *both*. In particular, as to the criminal details of the call, the evidence the minivan drove slowly, stopped, then drove again in the alley partially corroborated the caller's report of possible *criminal* casing activity.

We conclude Barbani pointed to specific articulable facts that, considered in light of the totality of the circumstances, provided an objective manifestation appellant might be involved in criminal activity, and we conclude that, on an objective basis, Barbani's stop of the minivan and detention of appellant were not unreasonable under the circumstances. (See *Suff, supra,* 58 Cal.4th at pp. 1053-1054.) We hold Barbani's initial stopping of the minivan and detention of appellant did not violate the Fourth Amendment. It follows any subsequent confession by appellant was not the product of a Fourth Amendment violation. The trial court properly denied appellant's Penal Code section 995 motion and renewed Penal Code section 1538.5 motion.

*DISPOSITION*

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, Acting P. J.

We concur:

ALDRICH, J.

EGERTON, J.[*]

---

[*]     Judge of the Los Angeles Superior Court, assigned by Chief Justice pursuant to article VI, section 6 of the California Constitution.