Filed 11/20/17; pub order 12/12/17 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H043445 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. C1510381) |
| v. | |
| REESE ALLEN STANLEY, | |
| Defendant and Respondent. | |

The superior court granted defendant Reese Allen Stanley's suppression motion and dismissed the criminal action against him after it found that the detention of defendant by a sheriff's deputy was not supported by reasonable suspicion. The prosecution challenges that finding. We conclude that the deputy's detention of defendant was reasonable, and we therefore reverse the superior court's order.

## I.  Facts

On the afternoon of May 7, 2015, Deputy Brian Tanaka responded to a dispatch telling him that a bus driver had spotted the suspect in "a 288 case" (lewd act on a child) on a VTA bus in San Jose. Tanaka was aware of the "288 case" because he had seen a report on the news that included a video of the suspect. He also knew that the sheriff's department distributes "Be on the Lookout" fliers to VTA bus drivers. Tanaka responded

to the bus, which was parked, boarded the bus, and spoke with the driver. The bus driver told Tanaka that he had seen a "picture" on a "Be on the Lookout" flier, and the picture "matched" a passenger on the bus. The "Be On the Look-out (BOLO)" flier issued by the San Jose Police Department on May 7, 2015 concerned a child sexual assault that had occurred on an afternoon two days earlier in the San Jose area. The flier described the suspect as "WMA, Age: 30, 5'10", 155 lbs, dark or brown shaggy hair w/beard, tan complexion, black shoes, black socks and a black beanie." The flier also contained three color photographs, two of which showed the suspect's face.

Tanaka had never seen the flier, but he recalled from the video he had seen on the news that the suspect was a white male. The bus driver pointed out defendant, who was asleep on a seat halfway back on the bus, as the man matching the picture the bus driver had seen on the flier. Tanaka awakened defendant, identified himself, handcuffed defendant, and removed him from the bus. Tanaka had defendant sit on a bus bench outside the bus. Defendant identified himself, and Tanaka learned from dispatch that defendant was on parole.

Other deputies, who arrived after Tanaka had detained defendant, had been informed by dispatch of the description given in the flier. Upon their arrival, they observed that, "[j]ust by the descriptors alone, [defendant] did match." The deputies were unable to access the flier themselves due to technical problems.

Defendant was subjected to a parole search, which turned up narcotics. About 10 to 15 minutes after the deputies searched defendant, they received clear photos of the suspect on the flier and determined that defendant was not the person depicted on the flier.

## II. Procedural Background

Defendant was charged with possession of heroin (Health & Saf. Code, § 11350) and possession of controlled substance paraphernalia (Health & Saf. Code, § 11364). He

2

moved to suppress the fruits of the search on the ground that Tanaka lacked reasonable suspicion to detain him.

The trial court granted defendant's suppression motion. "I think that the descriptors that law enforcement had are far, far, far, far too vague under these circumstances to have initiated a detention. [¶] I do think it does alter the equation somewhat that a citizen is saying that's the person I recognize. [¶] But I don't think the law enforcement officer can then delegate the duty of ascertaining the likeness of a description simply to that." The prosecution stated that it could not proceed, and the court dismissed the case.

## III. Analysis

"In reviewing the trial court's suppression ruling, we defer to its factual findings if supported by substantial evidence. We independently assess the legal question of whether the challenged search or seizure satisfies the Fourth Amendment." (*People v. Brown* (2015) 61 Cal.4th 968, 975.) Because the relevant facts are undisputed in this case, we exercise de novo review.

"The guiding principle in determining the propriety of an investigatory detention is 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.' [Citations.] In making our determination, we examine 'the totality of the circumstances' in each case." (*People v. Wells* (2006) 38 Cal.4th 1078, 1083 (*Wells*).) "But to be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' " (*In re Tony C.* [(1978)] 21 Cal.3d [888,] 894.) The officer's subjective suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity

3

exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." [Citation.]'" (*Wells*, at p. 1083.)

At the outset, we reject defendant's and the trial court's reliance on this court's decision in *People v. Walker* (2012) 210 Cal.App.4th 1372 (*Walker*). In *Walker*, a sheriff's detective had circulated an e-mail about a sexual assault that had occurred a week earlier at a downtown San Jose light rail station. The e-mail contained a description of the two suspects and photographs of the suspects taken from a surveillance video. The description of one suspect was: "'[B]lack male adult, approximately in his 20's, approximately six[-]one, 195, short afro, clean shaven, light complected, appeared unkempt[,] wearing a backpack.'" The description of the second suspect was: "'[B]lack male adult, 30's, approximately five[-]five, 195, short hair[,] unkempt with a body odor[,] wearing a black sweatshirt jacket with a hood and black pants.'" (*Walker*, at p. 1378.)

A deputy who had reviewed the e-mail, the photographs, and the video saw the defendant at the same downtown San Jose light rail station where the sexual assault had occurred a week earlier. "[D]efendant was 19 years old; was five feet 10 inches tall; weighed approximately 180 pounds; had short black hair; was of medium to dark complexion; had a mustache and a slight goatee; was well groomed; and was wearing a gray sweatshirt, blue jeans, and blue and white shoes" and "a cap or a hat." (*Walker*, *supra*, 210 Cal.App.4th at p. 1379.) The deputy detained the defendant. At the suppression hearing, the deputy testified that he thought the defendant resembled one of the suspects based on height, weight, age, hairline, and shape of nose. The trial court denied the defendant's suppression motion. (*Ibid.*)

On appeal, this court held that the "defendant's alleged resemblance to one or both of the suspects" did not provide the officer with reasonable suspicion to detain him because the defendant was not objectively a substantial match for either of the suspects. "[I]t is objectively clear that the 19-year-old, five-foot-10, 180-pound, well-groomed defendant could not have reasonably been considered to resemble Suspect Two—who

4

was described as being a Black male in his 30's, unkempt (with body odor), and 'approximately five[-]five, 195 [pounds].'" (*Walker*, *supra*, 210 Cal.App.4th at pp. 1385-1386.) This court concluded that the deputy's belief that the defendant resembled the other suspect also was not objectively reasonable because the only similarities were race, age, and weight. "[T]here were significant differences between Suspect One and defendant. Suspect One was described as approximately six feet one inches tall, while defendant is five feet 10 inches tall. . . . Further, Suspect One was described as 'clean shaven, light complected, [and] appeared unkempt,' while defendant is of medium to dark complexion, and at the time of the detention was well groomed and had a mustache and slight goatee." (*Walker*, at p. 1386.)

This court further concluded that the photographs reviewed by the deputy could not have provided support for a reasonable suspicion because those "photographs provide such poor depictions of the suspects' faces that their noses are not (or, charitably, are barely) discernible" and "comparing these photographs with defendant's booking photograph—one which Deputy Thrall testified was a fair and accurate depiction of defendant's appearance at the time of the arrest—there is no basis for concluding that defendant bore a close resemblance to either suspect. Thus, any opinion that Deputy Thrall held that defendant resembled one of the suspects in the photographs—whether based upon nose shape or otherwise—was not objectively reasonable." (*Walker*, *supra*, 210 Cal.App.4th at p. 1387.) "Given the absence of a match between defendant and the physical descriptions or photographs depicting the suspects, Deputy Thrall's bases for connecting defendant to the one-week-old sexual battery were his race and age," which were not sufficient to support a detention. (*Walker*, at p. 1388.)

Unlike *Walker*, this case does not involve the unusual situation where a deputy's claimed basis for a detention is belied by all of the facts other than race, age, and weight. Although the deputy in *Walker* claimed that the defendant resembled one of the two suspects, this court found that there was *no factual basis* for his claim other than race,

5

age, and weight. The photographs that the deputy had reviewed were "poor depictions" of the suspects' faces, and there was no evidence of any other similar characteristics. Here, in contrast, the evidence presented at the suppression hearing established that defendant matched not only the age, race, and weight of the suspect but also that he was the same height and had the shaggy hair and beard described in the flier. In addition, unlike in *Walker*, the color photographs in the flier in this case provided good depictions of the suspect's face. Hence, unlike the situation addressed by this court in *Walker*, this case was not one in which a person was detained based solely on his age, race, and weight. Consequently, we reject the assertion that *Walker* controls the result in this case.

Defendant contends that the information that the bus driver gave to Tanaka could not support a detention because this information was from a "secondary source." The United States Supreme Court long ago rejected the argument that a detention "can only be based on the officer's personal observation, rather than on information supplied by another person. Informants' tips, like all other clues and evidence coming to a policeman on the scene, may vary greatly in their value and reliability." (*Adams v. Williams* (1972) 407 U.S. 143, 147 (*Adams*).) "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, [the law] recognizes that it may be the essence of good police work to adopt an intermediate response. [Citation.] A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." (*Id.* at pp. 145-146.) Therefore, the bus driver's information could supply the basis for a detention.

Defendant maintains that the bus driver's information was insufficient to support a detention because it was analogous to an anonymous tip like the one that was found insufficient to support a detention in *Florida v. J.L.* (2000) 529 U.S. 266 (*J.L.*). He

6

contends that a report by an identified citizen, like the bus driver, must be treated the same as an anonymous tip because both involve reliance by law enforcement on a "secondary source." We disagree. "[P]rivate citizens who are witnesses to or victims of a criminal act, absent some circumstance that would cast doubt upon their information, should be considered reliable. This does not, of course, dispense with the requirement that the informant—whether citizen or otherwise—furnish underlying facts sufficiently detailed to cause a reasonable person to believe that a crime had been committed and the named suspect was the perpetrator; and the rule also presupposes that the police be aware of the identity of the person providing the information and of his status as a true citizen informant. . . . [N]either a previous demonstration of reliability nor subsequent corroboration is ordinarily necessary when witnesses to or victims of criminal activities report their observations in detail to the authorities." (*People v. Ramey* (1976) 16 Cal.3d 263, 269.)

Here, while the bus driver was not a witness to criminal activity, he was a "true citizen informant" because he voluntarily provided Tanaka with information that appeared to link defendant to a crime. Unlike information provided by an anonymous tip, information from a true citizen informant is considered reliable because a citizen informant "can be held responsible if her allegations turn out to be fabricated." (*J.L.*, *supra*, 529 U.S. at p. 270.) Consequently, the anonymous tip cases do not provide the appropriate framework for analyzing the propriety of the detention in this case.

We conclude that the information provided by the bus driver to Tanaka was sufficient to reasonably justify a brief stop of defendant to determine if he was actually the suspect sought in the "288 case." Tanaka knew that pictures of the suspect in the "288 case" had been widely disseminated. The bus driver told Tanaka that he had seen a picture of the suspect on a "Be on the Lookout" flier and that the picture on the flier "matched" a passenger on his bus. That flier had just been issued on the very day that the bus driver saw the passenger, so the picture must have been fresh in the bus driver's

7

mind.  Although Tanaka had only a vague recollection of the video he had seen, it was not inconsistent with the man identified by the bus driver as the suspect in the "288 case." And Tanaka had no reason to suspect that the bus driver had any motivation other than good citizenship.  Just because Tanaka lacked "the precise level of information necessary for probable cause to arrest," he was not required "to simply shrug his shoulders and allow a crime to occur or a criminal to escape."  (*Adams*, *supra*, 407 U.S. at p. 145.)  The information that Tanaka possessed was sufficient to support a brief detention.  "[T]he grave risks posed by" a person who appeared to be the man sought for sexually assaulting a child justified "the minimal intrusion of a brief investigatory" detention to determine if he in fact was the person sought.  (*Wells*, *supra*, 38 Cal.4th at p. 1082.)

## IV.  Disposition

The superior court's order dismissing the case is reversed, and the matter is remanded with directions to vacate that order and the order granting defendant's suppression motion and to enter a new order denying defendant's suppression motion.

_____
Mihara, J.

WE CONCUR:


_____
Elia, Acting P. J.


_____
Premo, J.


9

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| THE PEOPLE, | H043445 |
| Plaintiff and Appellant, | (Santa Clara County Super. Ct. No. C1510381) |
| v. | |
| REESE ALLEN STANLEY, | ORDER GRANTING REQUEST FOR PUBLICATION |
| Defendant and Respondent. | |


BY THE COURT:

Pursuant to California Rules of Court, rule 8.1105(b), the request for publication is hereby granted. It is ordered that the opinion in this matter, filed on November 20, 2017, shall be certified for publication.


Date: _____

Mihara, J.


_____

Elia, Acting P. J.


_____

Premo, J.

Trial Court:                                Santa Clara County Superior Court


Trial Judge:                                Honorable Helen E. Williams


Attorneys for Plaintiff and Appellant:      Kamala D. Harris
                                            Attorney General of California

                                            Gerald A. Engler
                                            Chief Assistant Attorney General

                                            Jeffrey M. Laurence
                                            SeniorAssistant Attorney General

                                            Laurence K. Sullivan
                                            Supervising Deputy Attorney General

                                            Bridget Billeter
                                            Deputy Attorney General


Attorney for Defendant and Respondent:      Eric Cioffi
                                            Law Office of Eric Cioffi


People v. Stanley
H043445