Filed 4/19/23  In re A.C. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>A.C.,<br><br>        Defendant and Respondent. | F084115<br><br>(Super. Ct. No. 21CEJ600340-1)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Ana I. de Alba, Judge.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Appellant.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Respondent.

-ooOoo-

## INTRODUCTION

While on routine patrol, an officer observed a vehicle, a 2006 Toyota Corolla, with the reflective coating on its license plate worn or scraped off. He initiated a traffic stop solely on this basis. The driver, a minor, was arrested after alcohol was observed in the vehicle in plain view of the officer. During a patdown search of one of the passengers, officers found a loaded firearm in respondent A.C.'s waistband. Following the filing of a juvenile wardship petition charging him with various offenses, A.C. moved to suppress this evidence, arguing the initial detention was not justified by reasonable suspicion. The trial court agreed, granted A.C.'s motion, and subsequently dismissed the case. The People appealed.

This case presents the following issue: Does the fact that the reflective coating on a vehicle's license plate is missing or worn off supply reasonable suspicion that would justify an investigatory stop and detention? We conclude the answer is no.

The fact that the reflective coating on a vehicle's license plate is missing is not, by itself, indicative of criminal activity. Unlike driving a vehicle with a cracked windshield (see Veh. Code, § 26710), it is not a crime to drive a vehicle affixed with a license plate that lacks reflective coating. The Vehicle Code prohibits the erasure of, painting over, or alternation of a license plate's reflective coating. (Veh. Code, § 5201.1, subd. (c).) Here, the detaining officer's suspicion that the Toyota's driver or his companions had erased or otherwise actively altered the reflective coating on the Toyota's license plate, in violation of Vehicle Code section 5201.1, was not objectively reasonable. We therefore affirm the trial court's order.

## PROCEDURAL HISTORY

On December 7, 2021, the District Attorney of Fresno County filed a juvenile wardship petition alleging that A.C. had committed the following offenses:

(1) possession of a firearm by a minor (Pen. Code,[1] § 29610, count 1); (2) carrying a concealed firearm (§ 25400, subd. (a)(2), count 2); and (3) carrying a loaded firearm in public (§ 25850, subd. (a), count 3).  As to counts 2 and 3, the petition further alleged that A.C. was not the registered owner of the firearm (§§ 25400, subd. (c)(6) [count 2], 25850, subd. (c)(6) [count 3]).

On February 7, 2022, A.C. filed a motion to suppress the evidence under Penal Code section 1538.5 and Welfare and Institutions Code section 700.1.

On February 17, 2022, the People filed a brief in opposition to A.C.'s motion to suppress.

On February 23, 2022, the juvenile court held a hearing on the motion.  After the conclusion of the evidentiary hearing and oral argument, the juvenile court granted the motion to suppress.

On March 7, 2022, the juvenile court dismissed the case under Welfare and Institutions Code section 700.1.

On March 17, 2022, the People filed a timely notice of appeal.

## STATEMENT OF FACTS

Fresno Police Officer Nataneal Morales testified at the hearing on A.C.'s motion to suppress.  His body-worn camera was introduced by the prosecutor at the hearing, along with a transcript of the audio recording.  This evidence established the following facts:

On December 4, 2021, at approximately 9:00 p.m., Officer Morales was on patrol in the area of Thorn and Whitesbridge in the City of Fresno.  He observed a 2006 Toyota Corolla.  The vehicle sped up and made four relatively quick turns before stopping abruptly on a curb.  Officer Morales could not clearly see the Toyota's license plate when

---

[1]     All statutory citations are to the Penal Code unless otherwise indicated.

he was behind it. It appeared to him as if the reflective coating had been worn or scraped off. As a result, it was "very difficult" for Officer Morales to see the numbers on the back of the license plate from a "few vehicle lengths away." Officer Morales activated his emergency lights and initiated a traffic enforcement stop.

When Officer Morales contacted the driver, G.S., he explained that he had stopped G.S. "for [his] license plate. It's all messed up." He asked G.S. where he lived and where he was coming from. When G.S. replied that he had "just picked up [his friend]," Officer Morales asked the backseat passenger, A.C., to roll down his window.

Surveillance video from Officer Morales's body-worn camera shows the backseat passenger opened the driver's side door. A "box" of beer bottles, in plain view, is visible on the floorboard near A.C.'s seat.

G.S. was unable to produce identification. However, Officer Morales confirmed that both G.S. and A.C. were under the age of 21, and therefore not legally in possession of the alcohol.[2] The record shows that the Toyota belonged to G.S.'s mother.

Officer Morales made the decision to arrest G.S. for being a minor in possession of alcohol and arranged to have the Toyota towed. He ordered all four occupants to exit the vehicle and with the assistance of another officer, conducted a patdown search for officer safety reasons. Officer Morales found a firearm in A.C.'s waistband.

At the suppression hearing, Officer Morales was asked whether a photograph of the driver's license plate showed "any evidence that someone tampered with [the] license plate?" He replied: "I feel it's beyond a reasonable doubt that could have happened that somebody could have erased or scraped off or worn off the reflective coating."

---

[2]     We presume the other passengers in the vehicle, two girls, were also minors.

4.

*The Trial Court's Ruling Granting A.C.'s Suppression Motion*[3]

At the conclusion of the evidentiary portion of the hearing on A.C.'s motion to suppress, trial counsel asserted that A.C.'s motion should be granted because there was no evidence of tampering with the license plate.

The prosecutor argued that assuming the stop was not lawful under Vehicle Code section 5201.1, subdivision (c), "because it was unclear who erased the reflective coating," then the stop was lawful under Vehicle Code section 5201, subdivision (a),[4] because the driver's license plate was not clearly legible. Although Officer Morales had not cited Vehicle Code section 5201, subdivision (a) as a basis for the traffic stop, he had testified that the driver's license plate was not clearly legible. The prosecutor asserted that the traffic stop was still lawful if the driver's conduct was unlawful under another Vehicle Code section. (See *In re Justin K.* (2002) 98 Cal.App.4th 695, 700 [" '[i]f the facts are sufficient to lead an officer to reasonably believe that there was a violation, that will suffice, even if the officer is not certain about exactly what it takes to constitute a violation' "].)

The trial court granted the motion to suppress, explaining:

> "[THE COURT]: … A couple of things here. Yes, the issue is whether or not there was reasonable suspicion for the stop. You do not need probable cause for a stop. You just

---

[3] On review, we "consider the correctness of the trial court's ruling … not the correctness of the trial court's reasons for reaching its decision." (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 145.) Notwithstanding, we recite the entirety of the juvenile court's stated rationale for granting A.C.'s motion to suppress because the juvenile court's reasoning is relevant to the parties' arguments on appeal.

[4] Vehicle Code section 5201, subdivision (a) provides: "License plates, shall at all times be securely fastened to the vehicle for which they are issued so as to prevent the plates from swinging, shall be mounted in a position so as to be clearly visible, and so that the characters are upright and display from left to right, and shall be maintained in a condition so as to be clearly legible."

need it for an arrest. Here we have the minor who was a passenger. The reasonable suspicion needed for a detention is based solely on an objective standard. The officer's subjective intent is irrelevant. That's Maryland versus Macon 1985 472 U.S. 463 pin cite 470 to 471.

"Here Officer Morales testified his reason for the stop was that the license plate lacked reflective coating. He specifically cited to [V]ehicle [C]ode section 5201.1. I have some concerns with his testimony and his findings here. [¶] So, I agree with your original position, [the prosecutor], that 5201.1 does not say that it is against the law or violation of the [V]ehicle [C]ode to drive a car that doesn't have reflective coating. What the violation is, is to be the person who removes the reflective coating or separately to have something mounted to the car that obstructs the officer's ability to see the numbers. I don't agree with you that he got it close enough and therefore we should be fine. I don't think that's right and my reading 5201 – excuse me 5201(a) require that license plates, including temporary ones, shall be at all times securely fastened to the vehicle. It appears that was the case. It was securely fastened from the photos. It doesn't like look [*sic*] the plates were swinging. There was no testimony as to that.

"It says they shall be mounted in a position as to be clearly visible. They were mounted up right up front. They did not appear by the pictures to have anything blocking them. The characters are up right and display from left to right. That all appears to be fine and shall be maintained in that condition so as to be clearly legible.

"That would be potentially your only hook, but I don't believe see from looking at that photograph that these plates were somehow not kept in a way this they can be. For example, if I were to go and look at the back of my car and I see that, oh, that looks like my reflexion [*sic*] has been scraped off am I then supposed to take somewhere to put it back on. Do I spray it? I don't understand how someone is supposed to do it. [¶] Now, if had been it looks like those numbers had been scratched off or some other sort of paint covering it then I would understand that that looks like you

haven't maintained it or you actively did something to make it not clearly legible.

"So, I don't find reasonable suspicion for the stop because I don't believe that there was violation of 5201.1 or 5201(a) frankly and as such I don't believe that the officer had reasonable suspicion for the stop. And with that I'm going to go ahead and dismiss this and seal pursuant to section 786."

## DISCUSSION

### I. The Detention Was Not Supported by Reasonable Suspicion

The People contend the juvenile court erred by granting A.C.'s motion to suppress. According to the People, Officer Morales had reasonable suspicion to believe that the reflective coating on the Toyota's license plate had been intentionally scraped or worn off for purposes of making it difficult to read. We conclude that the evidence proffered at the evidentiary hearing on A.C.'s motion to suppress fails to support such a conclusion. And, because the People failed to meet their evidentiary burden of showing that the detention was based upon reasonable suspicion of criminal activity, we further conclude that A.C.'s motion to suppress was properly denied.

#### A. Standard of Review

A defendant who brings a motion to suppress has the initial burden of proving a warrantless search or seizure occurred. (*People v. Flores* (2019) 38 Cal.App.5th 617, 626.) " 'There was no warrant in this case, so the burden shifted to the prosecution to show any warrantless searches or seizures were justified under the Fourth Amendment to the United States Constitution.... "[T]he controlling burden of proof at suppression hearings ... [is] proof by a preponderance of the evidence." (*United States v. Matlock* (1974) 415 U.S. 164, 178, fn. 14 ….)' " (*Ibid.*)

In ruling on a motion to suppress, the lower court determines the credibility of witnesses, resolves factual conflicts, and weighs the evidence. (*People v. Tully* (2012) 54

Cal.4th 952, 979.) On review from the denial of a motion to suppress evidence, we defer to the lower court's express and implied findings so long as those findings are supported by substantial evidence. (*People v. Glaser* (1995) 11 Cal.4th 354, 362.) However, we exercise our independent judgment in determining whether the facts as found by the court satisfy the prosecution's burden to show a warrantless search was reasonable under the Fourth Amendment. (*Ibid.*) Because we must consider the evidence in the light most favorable to the lower court's ruling on the motion to suppress, we resolve all factual conflicts in favor of the court's ruling. (*People v. Woods* (1999) 21 Cal.4th 668, 673-674.)

### B.  Relevant Legal Principles

"The Fourth Amendment to the United States Constitution prohibits seizures of persons, including brief investigative stops, when they are 'unreasonable.' (*Terry v. Ohio* (1968) 392 U.S. 1, 19 & fn. 16; [citation].) Our state Constitution has a similar provision. (Cal. Const., art. I, § 13.)" (*People v. Souza* (1994) 9 Cal.4th 224, 229.)

"[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." (*United States v. Sokolow* (1989) 490 U.S. 1, 7.) "[T]he detaining officer [must] point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza, supra*, 9 Cal.4th at p. 231.) "The officer's ... suspicion must be objectively reasonable, and 'an investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith. [Citation.]' [Citation.] But where a reasonable suspicion of criminal activity exists, 'the public rightfully expects a police officer to inquire into such circumstances "in the proper exercise of the officer's duties." ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083.)

8.

## C. Analysis

The sole basis articulated by Officer Morales for the traffic stop was an alleged violation of Vehicle Code section 5201.1, subdivision (c), which provides the following: "A person shall not erase the reflective coating of, paint over the reflective coating of, or alter a license plate to avoid visual or electronic capture of the license plate or its characters by state or local law enforcement."[5]

By use of the phrase, "a person shall not erase," the statute prohibits active conduct, including the removal or destruction of the reflective coating of a license plate, or otherwise altering the license plate to prevent it from being read by law enforcement. What is not included within the scope of activities prohibited by Vehicle Code section 5201.1, subdivision (c), is passive conduct, such as the natural delamination of reflective coating caused by weathering and the passage of time. And, as both parties observe, it is not a crime to drive a vehicle with a license plate that has had its reflective coating removed or worn off.

According to the Attorney General, "The issue [here] is whether, when an officer … observes a license plate that he or she reasonably believes has been altered in violation of [Vehicle Code] section 5201.1, subdivision (c), he or she can then lawfully 'initiate a brief investigative traffic stop' to determine whether a violation of section 5201.1 has occurred." The problem with the Attorney General's argument is that it is based upon the assumption that Officer Morales reasonably suspected that the Toyota's license plate may have been altered in violation of the Vehicle Code. "[T]o be reasonable, the officer's suspicion must be supported by some specific, articulable facts that are 'reasonably "consistent with criminal activity." ' " (*People v. Wells*, *supra*, 38 Cal.4th at p. 1083.)

---

[5] The Attorney General does not argue that the Toyota's license plate was not "clearly legible" because it lacked reflective coating (see Veh. Code, § 5201, subd. (a)), an alternative basis for the traffic stop cited by the prosecutor at the suppression hearing.

"The officer's subjective suspicion must [also] be *objectively* reasonable." (*Ibid.*, italics added.) That standard was not met here.

Officer Morales testified that the Toyota's reflective coating appeared to be "worn off or scraped off." Although he testified that he believed somebody could have erased, scraped, or worn off the reflective coating, he did not provide a factual basis for his belief. Thus, it is unclear why he believed that the reflective coating could have been scraped off by the driver or one of the vehicle's occupants, which is a crime, versus worn away as a result of natural weathering and erosion, which is not a crime.[6]

We have reviewed People's Exhibit No. 2, a color photograph of the Toyota's license plate. Nothing about the license plate as it is depicted in the photograph suggests that the reflective coating was intentionally worn off. Thus, it is unclear what facts and observations Officer Morales relied upon in forming his opinion.

We further observe that Officer Morales did not ask the driver of the Toyota about the reflective coating on his license plate when he initiated contact with the driver. He told the Toyota's driver he had pulled him over because his license plate was "all messed up." Rather than asking G.S. questions relevant to the condition of the license plate or even whether G.S. was the registered owner of the vehicle, Officer Morales asked G.S. where he was going and where he had come from. It is unclear how these questions could have assisted him in his investigation of whether the license plate had its reflective coating scratched or intentionally worn off.

---

[6] Officer Morales did not testify that in his experience, it is unusual for a vehicle of a certain age to naturally lose its reflective coating, without tampering. Nor did he explain that something about the appearance of the license plate suggested that the reflective coating was scraped off, such as distinct marking patterns. However, assuming he had offered testimony to this effect, we question whether it was objectively reasonable to suspect that G.S. had intentionally removed the license plate's reflective coating. The vehicle was a 2006 Toyota, which was nearly as old as G.S. Absent a direct admission of wrongdoing by G.S., it is unclear how Officer Morales could have determined whether G.S. specifically had removed the reflective coating.

10.

The principal function of a police detention is to investigate whether the activity precipitating the detention, which may be fully consistent with lawful conduct, " 'is in fact legal or illegal.' " (*People v. Souza*, *supra*, 9 Cal.4th at p. 233, citing *In re Tony C*., (1978) 21 Cal.3d 888, 893.) However, when the focus of that investigation is unrelated to the purpose of the stop, the circumstances support the conclusion that the stop was in actuality "predicated on mere curiosity, rumor, or hunch" (*People v. Wells, supra,* 38 Cal.4th at p. 1083) rather than determining whether specific criminal activity was occurring.

The record here is devoid of information showing that *specific* criminal activity had likely occurred. Officer Morales's suspicion that the reflective coating had been scratched or intentionally worn off was unsupported by particularized and objective facts. (See *People v. Souza, supra,* 9 Cal.4th at p. 238.) All that was shown was that the Toyota's license plate was lacking its reflective coating, which both parties agree is not a crime, nor, in our view, is it inherently suspicious. To conclude that a detention is lawful on this basis alone would provide legal justification to detain an unknown, but presumably significant number of drivers in the State of California, eroding the constitutional protections guaranteed by the Fourth Amendment.

The Attorney General contends that *Kansas v. Glover* (2020) 140 S.Ct. 1183, is instructive. There, the United States Supreme Court held that police had reasonable suspicion to justify a traffic stop based upon the commonsense inference that the defendant—the registered owner of the vehicle whose license had been revoked—was likely the driver. The Supreme Court observed that "empirical studies demonstrate that drivers with suspended or revoked licenses frequently continue to drive," and the fact that the prohibition was codified in the first place "reinforces the reasonableness of the inference that an individual with a revoked license will continue to drive." (*Id.* at p. 1185.)

That same commonsense inference simply does not apply here. It is not commonsense to infer: (1) a license plate lacking its reflective coating has had its coating intentionally removed, particularly when that vehicle was manufactured in 2006, and (2) that "either the driver or one of the passengers in the car would have information as to how the license plate came to be in that condition," as the Attorney General asserts. Nothing within the record suggests that G.S. continuously owned the Toyota since the license plates were affixed. Indeed, G.S. was not even the registered owner of the vehicle. We therefore conclude that *Kansas v. Glover* is factually distinguishable.

We acknowledge that reasonable suspicion is relatively a low threshold. "[T]he 'reasonable suspicion' necessary to justify a brief, investigative detention is a level of suspicion that is 'obviously less demanding than that for probable cause' and can be established by 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " (*United States v. Sokolow*, *supra*, 490 U.S. at p. 7; see, e.g., *People v. Letner and Tobin, supra*, 50 Cal.4th 99 at p. 142 [finding reasonable suspicion justified traffic stop where the officer observed a vehicle beaded with water, driving in an area with numerous recent reported car thefts, and traveling "at an abnormally slow speed for no apparent reason"].) Notwithstanding, the evidence adduced at the suppression hearing here falls short of that standard. We conclude that the detention was unlawful and the evidence obtained during the course of the traffic stop was therefore properly suppressed by the trial court.

## **DISPOSITION**

The trial court's order is affirmed.

12.

                                                                SMITH, J.

WE CONCUR:


FRANSON, Acting P. J.


PEÑA, J.

13.