Filed 7/19/24  P. v. Llamas CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

THE PEOPLE,

    Plaintiff and Respondent,

v.

VICTOR JOSE LLAMAS,

    Defendant and Appellant.

2d Crim. No. B330248
(Super. Ct. No. 2022028437)
(Ventura County)

---

    Victor Jose Llamas appeals from the judgment after a jury convicted him of resisting an executive officer.  (Pen. Code,[1] § 69, subd. (a).)  The trial court suspended imposition of sentence and ordered him to serve two years of formal probation.  Llamas contends: (1) the court erroneously denied his motion to suppress evidence, (2) insufficient evidence supports his conviction, (3) the court misinstructed jurors on the intent required to resist an executive officer, and (4) the court should have reduced his conviction to a misdemeanor.  We affirm.

---

    [1] Statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL HISTORY

Dustin Heersche, a uniformed Ventura County sheriff's deputy, was patrolling a Moorpark business area just after 11 p.m. when he heard what he "recognized to be possibly like a large metal roll-up door being manipulated in some fashion." He looked over and saw Llamas next to the door of a tire store. Llamas was wearing a heavy jacket and had a bicycle next to him. Heersche approached Llamas, suspecting a commercial burglary may be in progress. When he made contact, Llamas was argumentative and refused to answer his questions. He smelled of alcohol.

Llamas asked Heersche who he was. Heersche said he was a sheriff's deputy. He explained that Llamas was being detained and was not free to leave.

Heersche said that it looked like Llamas was tampering with the door to the tire store and that Llamas did not work there. He said that Llamas was "so drunk, it's ridiculous." Llamas said that he would just go home.

While Heersche waited for backup, Llamas repeatedly asked him who he was and why he was there. He refused to consent to a patdown search. Heersche conducted one and placed Llamas under arrest.

As Heersche tried to get him into his patrol vehicle, Llamas called Heersche a "white-ass motherfucker" and threatened to headbutt him in the face. He then kicked Heersche in the face. Heersche's jaw had an "irritation" as a result of Llamas's kick.

DISCUSSION

*Motion to suppress*

Llamas first contends the trial court erroneously denied his motion to suppress the evidence obtained during his detention and arrest. We disagree.

*1. Background*

Prior to trial, Llamas moved to suppress evidence obtained during his detention and arrest. At a hearing on Llamas's motion, Heersche said that during his patrol on the night of Llamas's alleged crime he heard a noise consistent with a large metal door being manipulated. A tire store in the area had such doors. Llamas was near one of them. He was bent over and balancing a bicycle in one hand.

Llamas stood up and "nervously walked away from the door" to the tire store when Heershce approached. Heersche did not think these actions were consistent with someone who worked at the store. He thought Llamas may be trying to break in, and detained him to investigate.

Llamas appeared to be intoxicated. He denied that Heersche was a sheriff's deputy, and put the bicycle between the two of them. He called Heersche names, using racist and homophobic language. He told Heersche to take off his badge so the two of them could fight. Based on these actions Heersche believed that Llamas was obstructing the investigation and that there was a high likelihood of having to use force to get him to comply. He arrested Llamas for obstruction and searched him.

The trial court denied Llamas's motion to suppress. The incident occurred late at night, in an area where all businesses were closed. Heersche heard a noise consistent with "a tool being used to try to pry open [a] door." At that point he "would have

3

been derelict in his duties if he" did not investigate.  When he approached the store, Llamas appeared "nervous" and then became aggressive.  Llamas smelled of alcohol and refused to cooperate.  Based on these circumstances Heersche had reasonable suspicion to detain Llamas and probable cause to arrest him.  He then properly searched Llamas incident to arrest.

*2.  Discussion*

The Fourth Amendment protects "against unreasonable searches and seizures" by the police.  (U.S. Const., 4th Amend.)  Evidence obtained in violation of this guarantee may not be used in a subsequent prosecution.  (*Mapp v. Ohio* (1961) 367 U.S. 643, 655.)  On review of the denial of a motion to suppress evidence, we view the facts most favorably to the prosecution and uphold the trial court's factual findings if supported by substantial evidence.  (*People v. Woods* (1999) 21 Cal.4th 668, 673.)  We independently decide whether a search or seizure was reasonable under the Fourth Amendment.  (*People v. Weaver* (2001) 26 Cal.4th 876, 924.)

A law enforcement officer may "temporarily detain a suspect based . . . on a 'reasonable suspicion' that the suspect has committed or is about to commit a crime."  (*People v. Bennett* (1998) 17 Cal.4th 373, 386-387.)  Reasonable suspicion is a less-demanding standard than probable cause, but still requires "specific, articulable facts that are 'reasonably "consistent with criminal activity" ' " (*People v. Wells* (2006) 38 Cal.4th 1078, 1083); mere curiosity, rumor, or hunch will not suffice (*Terry v. Ohio* (1968) 392 U.S. 1, 22).  Whether reasonable suspicion for a detention exists requires an independent examination of the totality of the circumstances.  (*People v. McCullough* (2013) 56 Cal.4th 589, 595-596.)

4

An arrest is valid if supported by probable cause. (*People v. Kraft* (2000) 23 Cal.4th 978, 1037.) Probable cause "exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (*Ibid.*) There is no " 'exact formula' " for determining whether probable cause exists. (*People v. Maltz* (1971) 14 Cal.App.3d 381, 390.) Each case must be decided on its own facts and circumstances. (*Ibid.*)

The totality of the circumstances reveals that Heersche had both reasonable suspicion to detain and probable cause to arrest Llamas. As to the detention, Heersche testified that late one night he was patrolling a commercial area when he heard a noise that sounded like something hitting a metal door. A nearby tire store had this type of door and Llamas was crouched next to it. But the store had long been closed. When Heersche went over to ask what Llamas was doing, Llamas appeared nervous and began to walk away. Heersche also noticed a strong odor of alcohol and Llamas appeared to be drunk. Heersche told Llamas, "You don't work here and you smell like alcohol. So, you're being detained so I can investigate what's goin' on." These facts, considered in their totality, provided Heersche with reasonable suspicion to detain Llamas and investigate whether a crime had been committed or Llamas was attempting to burglarize the tire store. (See, e.g., *U.S. v. Dawdy* (8th Cir. 1995) 46 F.3d 1427, 1430 [reasonable suspicion where defendant near a closed business attempted to leave when police car approached].)

Heersche's reasonable suspicion soon ripened to probable cause. Llamas repeatedly questioned whether Heersche was a sheriff's deputy, put a bicycle between himself and the deputy, became aggressive, and refused to cooperate. At that point

Heersche had probable cause to arrest Llamas for obstructing his investigation (see, e.g., *People v. Lloyd* (1989) 216 Cal.App.3d 1425, 1429; *In re Michael V.* (1974) 10 Cal.3d 676, 681-683) or for public intoxication (see § 647, subd. (f)). The trial court properly denied the motion to suppress evidence.

*Sufficiency of the evidence*

Llamas next contends his conviction must be reversed because there was no legal basis for Heersche to arrest him and therefore insufficient evidence that he resisted any such attempt. (Cf. *In re Manuel G.* (1997) 16 Cal.4th 805, 816 [resistance must occur while law enforcement official legally performs their duty].) But as set forth above, Heersche had probable cause to arrest Llamas. Heersche was thus engaged in the legal performance of his duties when Llamas resisted by kicking Heersche in the face. Reversal on this basis is unwarranted.

*Jury instruction on intent*

To convict Llamas of resisting an executive officer, the trial court instructed jurors that prosecutors had to prove beyond a reasonable doubt that: (1) Llamas used force or violence to resist Heersche; (2) when Llamas acted, Heersche was performing his lawful duty; (3) when Llamas acted, he knew Heersche was an executive officer; and (4) when Llamas acted, he knew Heersche was performing his duty. (See CALCRIM No. 2652.) The court also instructed jurors with CALCRIM No. 250 regarding general intent:

> "The crimes charged in this case require proof of the union, or joint operation, of act and wrongful intent.

> "For you to find a person guilty of the crime[] of [r]esisting [a]n [e]xecutive [o]fficer [i]n [p]erformance

6

of [d]uty, as charged in count [1], or a lesser included offense, that person must not only commit the prohibited act, but must do so with wrongful intent. A person acts with wrongful intent when [they] intentionally do[] a prohibited act; however, it is not required that [they] intend to break the law. The act required is explained in the instruction for that crime." (See CALCRIM No. 250.)

Llamas contends the trial court erred in giving this instruction because the bench notes state that it should not be given if the charged crime requires a specific mental state. By instructing the jury with CALCRIM No. 250, Llamas contends the court "remov[ed] . . . an element of the crime, in this case, mental state," thereby denying him due process. But Llamas did not object to this instruction at trial. His contention is forfeited. (*People v. Valdez* (2004) 32 Cal.4th 73, 113.)

It also fails on the merits. We independently review whether the trial court properly instructed the jury on intent and whether its instructions "accurately state[d] the law." (*People v. Mitchell* (2019) 7 Cal.5th 561, 579.) We view the challenged instruction " 'in the context of the instructions as a whole and the trial record to determine whether there is a reasonable likelihood the jury applied [it] in an impermissible manner.' " (*Ibid.*) Our job is to determine "whether there is a reasonable likelihood that the . . . instruction[] caused the jury to misapply the law." (*Ibid.*)

We see no such reasonable likelihood here. "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon the officer by law, or who knowingly resists, by the use of force or violence, the officer, in the performance of [their] duty, is" guilty of violating section 69. (§ 69, subd. (a).) "The Supreme

7

Court has explained that section 69 'sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of [their] duty.'" (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1417-1418.) The first of these is a specific intent crime. (*Id.* at p. 1420.) The second is a general intent crime. (*Id.* at pp. 1419-1421.)

Here, prosecutors relied solely on the second version of the crime. Llamas concedes as much. Instructing jurors pursuant to CALCRIM No. 250 was therefore proper.

*Motion to reduce conviction to a misdemeanor*

At sentencing, Llamas moved the trial court to reduce his felony conviction for resisting an executive officer to a misdemeanor pursuant to section 17, subdivision (b). He had no prior felony convictions. He had been present for all court dates and was respectful during the proceedings. He had not used methamphetamine for 16 months and had not drunk alcohol for one month. During that month, he took responsibility for his life and complied with all terms of his release.

The probation report stated that Llamas had several prior misdemeanor convictions, including for driving under the influence and being under the influence of a controlled substance. He posed a low overall risk of reoffending, but a moderate risk due to his substance abuse and mental health issues. He had been wearing an alcohol monitoring device for one month. He accrued no violations during that time, and had no significant disciplinary write-ups while in custody.

Prosecutors opposed Llamas's motion. They argued Llamas had not yet proven "his ability not to consume alcohol." Further,

8

if the court was considering reducing Llamas's offense to a misdemeanor, it should require a showing of at least one year of sobriety, with no police contacts during that time.

The trial court agreed with prosecutors' argument. It explained:

> "Okay. Well, Mr. Llamas, I do very much appreciate the fact that you have stayed sober while you were on pretrial supervision. Not everybody does that, and I do appreciate that. I do also appreciate that you realize the importance of getting sober, getting your life together, and getting mental health treatment and you're finally taking responsibility and getting into your DUI programs; however, I do agree with [the prosecutor] in that was—really her thoughts were my thoughts actually before I took the bench this morning, but did keep an open mind and wanted to hear both sides.

> "I've seen—I've been doing—working in the criminal justice system for 26 years now, and I do see people who truly want to change their lives and get sober, but I also see those same people that stay sober for a bit of time and then fall off the wagon. So I am going to deny the 17(b) at this time, but if you—if you do stay sober, you don't pick up any new offenses, you don't throw any dirty tests to probation, and—and you comply with the—all the terms of your probation, I will grant a 17(b) after one year."

Llamas contends this was an abuse of discretion. We disagree.

A trial court has broad discretion to grant or deny a motion to reduce a conviction to a misdemeanor. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.) When exercising

9

that discretion, the court should consider " 'the nature and circumstances of the offense, the defendant's appreciation of and attitude toward the offense, or [their] traits of character as evidenced by [their] behavior and demeanor at the trial.' " (*Id.* at p. 978.) "When appropriate, judges should also consider the general objectives of sentencing." (*Ibid.*) A court's failure to consider these factors " 'exceeds the bounds of reason.' " (*Ibid.*)

There was no abuse of discretion here. Llamas had several prior drug- and alcohol-related convictions. When he moved the trial court to reduce his crime to a misdemeanor he had refrained from using alcohol for just one month. It did not exceed the bounds of reason for the court to demand a longer period of sobriety before reducing Llamas's conviction.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.

BALTODANO, J.

We concur:

YEGAN, Acting P. J.

CODY, J.

10

Kristi J. Peariso, Judge

Superior Court County of Ventura

_____

Susan S. Baugess, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.